430 P.2d 685

Gretchen I. STAHL, Plaintiff-Respondent,

v.

Rudolf W. STAHL, Defendant-Appellant.

No. 9666.

Supreme Court of Idaho.

July 27, 1967.

Smith, Miller & Weston, Caldwell, for appellant.

Gigray, Boyd & Downen, Caldwell, for appellee.

McFADDEN, Justice.

Gretchen I. Stahl, the plaintiff-respondent, about two and a half years following her marriage in December, 1961, to Rudolf W. Stahl, the defendant-appellant, instituted this divorce action alleging her husband was guilty of extreme cruelty towards her. She also sought a division of the community property, support money for two years, and attorney's fees. The trial court entered judgment granting respondent the divorce, generally awarding her the property she sought, support money for twelve months and attorney's fees.

Following entry of the findings of fact, conclusions of law and judgment, appellant took this appeal. Although he appeals from the whole of the judgment, primarily he challenges the division of property between the parties, particularly asserting that the trial court erred in entry of two findings of fact and a conclusion of law dealing with the distribution of the property between the parties. The challenged findings of fact read:

## "VI.

"That prior to the marriage of plaintiff and defendant, to-wit, on the 29th day of May, 1961, plaintiff contracted to purchase a trailer house at the cost of $7,900.00, with a trade-in allowance of $2,492.00 but with time differential cost of $2,310.68; that plaintiff paid six monthly payments of $109.31 each upon the principal balance before her marriage to the defendant; after the marriage, with community funds, twelve payments of $109.31 were made upon the principal in 1962, and twelve payments of $109.31 were made in 1963; three payments of $109.31 were made in January and March of 1964, and $2,500.00 *was paid by the plaintiff upon the trailer house from money originally the sole and separate property of the defendant, which had first been deposited in the joint savings account of the parties and was intended to be, and did become, community property;* that after the marriage of the plaintiff and defendant the sum of $2,951.37 of community funds was paid on the principal balance of the contract of purchase of said trailer, together with the $2,500.-00 as set out herein." (Emphasis added.)

## "XII

"That until the parties became estranged, everything except as hereinafter set out, was thrown in and considered as community property; that all moneys and property advanced by each party from earnings and from sole and separate sources were put into the common 'community pool'; that everything became community property except the undivided ⅓ interest in the cabin property which plaintiff acquired before marriage and which she intended to, and did retain, as and for her sole and separate property, and the personal clothing and effects of each party."

By the challenged conclusion of law, the court concluded that the property should be divided in accordance with the foregoing quoted findings of fact.

Both parties were employed during the period of their marriage. The wife earned approximately half of what the husband was earning. Their earnings were deposited in a checking account, upon which both parties could draw, and which they denominated as a "joint" account. A portion of the husband's earnings went into a credit union savings account. Funds were expended during the course of the marriage for their living expenses out of the account.

At the time of the marriage, the wife had purchased under a conditional sales contract a fifty-five foot American Trailer house. All the facts except as hereinafter noted, as found by the trial court outlined in finding VI, above, in regard to the purchase of this trailer house are fully sustained by the evidence in the form of copy of the contract, receipts and notations made. The one portion of this finding, which is most seriously challenged by appellant, is the underscored portion of that finding to the effect that the parties intended that the $2500.00 paid by the wife on the trailer house was intended to be and did become community property.

The wife also owned, at the time of her marriage, an undivided one-third interest in a cabin and furnishings, which interest she had inherited from her mother. After the marriage, according to her testimony she acquired with appellant's consent, from her relatives, all other interests in the cabin and furnishings, except for an undivided one-twelfth interest owned by one of her nieces.

After their marriage, the parties acquired other property which the court divided gen-

erally in accordance with the wife's prayer for relief and concerning which appellant has no complaint. This property included two motor vehicles, one a 1960 Oldsmobile sedan owned by the wife prior to the marriage, upon which payments were made from the earnings of the parties, and the other a pickup truck, for which appellant had traded in a truck owned by him prior to marriage. The property also included a boat and trailer and various items of personal property.

At the time of the marriage appellant had an interest in a beverage store. This was sold, and in payment appellant received two checks, one for $2,850.00, dated December 27, 1962, and the other for $3,000.00 dated January 27, 1964.

Sometime during the course of the marriage, the parties opened two bank accounts, one the checking account previously referred to and the other a savings account. The parties called these accounts "joint" accounts, although there is no evidence as to just how, when or under what circumstances these accounts were opened. Respondent wife deposited about $450.00–$480.00 she received from her mother's estate into the savings account. Appellant deposited money received from the sale of his business into the savings account. The wife used some of the money she had so deposited to make an initial payment on a boat the parties purchased during their marriage, as evidenced by her checks dated March 5, 1962, totaling $360.48. This money was withdrawn from the savings account and deposited into the checking account and from there paid on the boat. In addition to using this checking account for living expenses, they used it to make monthly payments on the various conditional sales contracts.

In March of 1964, respondent withdrew $2500.00 from the savings account and applied it on the balance due on the American Trailer house, which prior to her marriage she had contracted to purchase, and which the court awarded to her in the decree of divorce.

Appellant contends that this $2500.00 was not community property as found by the trial court, but asserts that the record shows without contradiction that it was his sole and separate property. The trial court recognized that initially it was his sole and separate property, but found that it had been converted into community property.

Respondent acknowledges that this $2500.00 came from the sale by appellant of his interest in the beverage store and that it had been deposited in the joint savings account of the parties. Appellant likewise testified that this money came from the sale of his interest in the store. He stated:

"Q. Did you know at the time that it was paid [on the trailer house by respondent] that it was going to be paid? A. The Trailer house?

Q. Yes. A. I did not.

Q. When did you first find that it was paid? A. I had found it out about—I would say all the way from a month to a month and a half later."

There is no dispute as to the source of these funds paid by respondent and there is a serious question if there is evidence to sustain the trial court's finding that all property "except as hereinafter set out, was thrown in and considered as community property; that all moneys and property advanced by each from earnings and from sole and separate sources were put into the common 'community pool'; that everything became community property except the undivided 1/3 interest of the cabin property, * * *." These parties had only been married about two and a half years when the divorce action was filed. Commingling of their earnings, which were community property, in the checking account is nothing more than recognition of their vested community interest in the other's earnings. There is

a complete absence of any evidence of how the two bank accounts were created, the date, the agreement between the parties or the conversations leading to their creation. There is no evidence as to what, if any, balance remained in the savings account, or the checking account; nor is there any evidence substantiating the trial court's findings that the parties intended to create a "community pool." There is no record of any marriage settlement, as mentioned in I.C. § 32–916, which provides:

> "The property rights of husband and wife are governed by this chapter, unless there is a marriage settlement containing stipulations contrary thereto."

It is recognized that there is a presumption that all property acquired by the spouses during coverture is community property; Brockelbank, Community Property Law of Idaho (1962), pp. 123–24; however, when the source of the property can be established with reasonable certainty and particularity as the separate property of one or the other, the effect of such presumption is overcome, and the property so traced retains its character as separate property. See: Nichols v. Nichols, 84 Idaho 379, 372 P.2d 758; Rose v. Rose, 82 Idaho 395, 353 P.2d 1089; Shovlain v. Shovlain, 78 Idaho 399, 305 P.2d 737; Morgan v. Firestone Tire & Rubber Co., 68 Idaho 506, 201 P.2d 976; Stewart v. Weiser Lumber Co., Ltd., 21 Idaho 340, 121 P. 775; Northwestern and Pacific Hypotheek Bank v. Rauch, 7 Idaho 152, 61 P. 516.

The trial court by its finding of a "community pool" in effect held that the property had been so commingled as to make impossible the application of the doctrine of tracing of separate funds. In Brockelbank, Community Property Law of Idaho, supra at pp. 132–3, it is stated as concerns commingling of property:

> "Commingling as a source of community property has been definitely established by two recent cases [Rose v. Rose, 82 Idaho 395, 353 P.2d 1089 (1960) and Gapsch v. Gapsch, 76 Idaho 44, 277 P.2d 278, 54 A.L.R.2d 416, (1954)] and is

taken for granted in a good many others as an application of the presumption that all property acquired during marriage is community property. [citations omitted.] In the Rose case the marital relation had continued for sixteen years, and the husband was either unable to prove to the satisfaction of the court the separate source of funds deposited in the family bank account or his testimony was taken to admit that the parties had for sixteen years regarded the bank account as common property. In the Gapsch case the parties had commingled separate and community funds in a common bank account, beyond possibility of tracing and the court held the whole account to be community. [Citations omitted.]

> *"Of course the cases establish the corollary doctrine that tracing the fund to its source is always possible."* (citing: Coleman v. Jaggers, 12 Idaho 125, 85 P. 894 (1906); In re Reizian's Estate, 36 Cal.2d 746, 227 P.2d 249 (1951) noted in 25 So.Cal.L.Rev. 464; In re Binge's Estate, 5 Wash.2d 446, 105 P.2d 869 (1940); Thomasset v. Thomasset, 122 Cal.App.2d 116, 264 P.2d 626 (1953).) (Emphasis added.)

In Thomasset v. Thomasset, 122 Cal.App.2d 116, 264 P.2d 626, 631 (1953), that court stated:

> "It appears to be plaintiff's contention that if a dollar which is separate property is deposited in a bank account in which there is a dollar which is community property, the dollar which was separate property becomes community property; and if a dollar which is community property is deposited in a bank account in which there is a dollar which is separate property, the latter dollar becomes community property; and that, in either case, all property purchased with the deposited funds is community property. That is not the law. Where separate and community funds are so commingled that it is *impossible* to trace the source of the funds, the whole will be treated as community property. Fountain v. Maxim,

210 Cal. 48, 51, 290 P. 576. The presumption that property acquired during marriage is community is controlling only when it is impossible to trace the source of the specific property. Gudelj v. Gudelj, 41 Cal.2d 202, 259 P.2d 656."

 So long as the separate property of either spouse is identifiable and traceable, commingling of such separate property with community property does not convert the separate property into community property. Inasmuch as the parties recognize the source of these funds as being the separate property of the husband, it is our conclusion that the trial court was in error in considering the $2500.00 paid by respondent wife on the trailer house contract to be community property.

A trial court in making disposition of the community property of the parties under I.C. § 32–712, subp. 1. (as it existed at the time of this divorce), must assign it "to the respective parties in such proportions as the court, from all the facts of the case and the condition of the parties, deems just", and in making an allowance for the maintenance of the wife (I.C. § 32–706) the trial court is authorized to compel the husband "to make such suitable allowance to the wife for her support as the court may deem just, having regard to the circumstances of the parties respectively". When a major portion of an award is found as here to have been made erroneously, it is only equitable that the trial court review the disposition of the community property and the allowance for the wife's support so that ultimate disposition of the property is fairly and equitably made with adequate allowance for the wife's support.

That portion of the judgment awarding the decree of divorce is affirmed, but the portion of the judgment pertaining to disposition of community property and allowance for the wife's support is reversed and the cause remanded for further proceedings. No costs allowed.

SMITH, McQUADE and SPEAR, JJ., and WARD, D. J., concur.