524 P.2d 176.

**In the Matter of the ESTATE of Nelson H. COOKE, Deceased.**

**Raymond T. GREENE, Jr., Administrator, Plaintiff-Respondent and Cross-Appellant,**

**v.**

**Cliff COOKE and Kathleen I. Foder, Defendants-Appellants and Cross-Respondents.**

No. 10839.

Supreme Court of Idaho.

Dec. 17, 1973.

On Rehearing July 8, 1974.

Stephen Bistline, Sandpoint, for defendants-appellants and cross-respondents.

Raymond T. Greene, Jr., James E. Hunt, Greene & Hunt, Sandpoint, for plaintiff-respondent and cross-appellant.

DONALDSON, Chief Justice.

Nelson H. Cooke (hereinafter referred to as the testator) died in California on February 20, 1966, leaving a holographic will which reads as follows:

"3 February 1965

"I Nelson H. Cooke the undersigned below does hereby declare this to be my Last Will & Testament to wit.

"I give devise and bequeath to my wife, Vera Darlene all of the property of which I die possessed, and request that no further probate of my estate be made other than that prescribed by law.

"Should any other person make claim to my estate I give to such person the sum of one dollar ($1.00).

"Nelson H. Cooke
210 Rosa Avenue
San Clemente, Calif."

Upon the petition of the testator's wife, Vera Darlene Cooke, his will was admitted to probate in the probate court for Bonner County, Idaho. Raymond T. Greene was subsequently appointed administrator with will annexed. After the administrator had petitioned for distribution according to the terms of the will, objections were filed by Cliff Cooke and Kathleen I. Foder, the testator's children by a former marriage. From a probate court determination, the matter was appealed to the district court, which tried the issues de novo without a jury; both sides—the administrator on the one hand and the testator's children on the other—appeal to this Court from the decision rendered by the district court.

The testator and Vera Darlene Cooke were married on March 14, 1964. Soon after, they opened a joint checking account with right of survivorship at the San Clemente office of the United California

Bank. Income received by both the testator and his wife was deposited into this account, which usually had an operating balance of about $1,000.

At the time of the marriage, the testator was the proprietor of a business known as San Clemente Sportfishing, Inc. In August of 1965, the Cookes took a trip to northern Idaho to search for real property suitable for a trailer park or a marina On August 10, 1965, the testator wrote out a check for $500 on the United California joint checking account, as earnest money on a parcel of real property located in Bonner County. On the same date, the testator and his wife opened up a joint checking account with right of survivorship at the Sandpoint office of the Idaho First National Bank; deposited at that time was a check in the amount of $6,925 drawn on the account of San Clemente Sportfishing, Inc. The Cookes returned to California, where the testator sold his interest in San Clemente Sportfishing, Inc.; the proceeds of sale, amounting to $55,000, were deposited in the couple's joint checking account at the United California Bank.

Around the first of September, 1965, the Cookes moved to Idaho, intending to locate permanently in Bonner County. On September 7, 1965, two checks totaling $50,050, were deposited into the Cookes' account at the Idaho First National Bank. One of the checks, in the amount of $50, was drawn in favor of the testator's wife in partial payment of a debt owed to her under a deed of trust acquired prior to her marriage to the decedent. The other check, in the amount of $50,000, was drawn by the testator on the couple's joint account at the United California Bank in San Clemente.

The agreed purchase price for the Idaho property was $25,000 plus interest. Except for the initial $500 payment, all of the purchase money paid for the property consisted of funds which had been deposited by the Cookes in the Idaho First National Bank checking account. Two payments— one of $6,875 and one of $4,752—were

made prior to the testator's death in February of 1966. A third and final payment, in full satisfaction of the outstanding balance owing, was made by the testator's wife in April, 1966; although her check for $13,463 was drawn on an Alhambra, California, bank, she admits that this payment consisted of funds transferred by her from the Idaho First National Bank account.

On the date of the testator's death, there remained about $25,000 in the Idaho First National Bank account and about $5,000 in the United California account. During their two years of marriage, the testator's wife deposited into these accounts about $7,000 of "money from her own sources" (since this consists in part of her wages during marriage, at least some of this amount would have the status of community income).

When the balance of the down payment on the real property was made on September 8, 1965, the Cookes received a warranty deed which conveyed the property to "Nelson H. Cooke and Vera Darlene Cooke, husband and wife." However, after the deed had been signed by the grantors and delivered, the testator interlineated the words "with sole ownership to the survivor" after the words "husband and wife" appearing in said deed. According to the real estate broker who handled the sale, the testator made it very clear that in case of his death, he wanted the property to go to his wife by right of survivorship.

In January, 1966, the Cookes decided that because of the severe winters prevalent in northern Idaho, it would be impossible for them to continue to live there. They therefore left Idaho, intending to establish a residence somewhere along the Colorado River in either Nevada or Arizona. They were still searching for a piece of property along the river when Nelson Cooke died during a one-day business trip to California.

In the district court, the testator's children claimed to be pretermitted and therefore entitled to share in their father's es-

tate as provided in I.C. § 14–320 (prior to its repeal in 1971); they further contended that the Bonner County real property and the funds remaining in the joint bank accounts were the testator's separate property and that they are entitled to two-thirds of the estate. His widow, on the other hand, contended that both the bank account and the real estate had been held in joint tenancy and, therefore, both passed to her by right of survivorship upon her husband's death.

Concluding that the testator's omission to provide for his children was not intentional, the district court decided that they were pretermitted and therefore entitled to an intestate share according to I.C. § 14–320.

Although the district court found that the testator had deposited his separate property in the joint accounts with the intent of conferring a gift upon his wife, it nevertheless concluded that the real property purchased with these joint tenancy funds was tenancy in common property. The court reasoned that the non-joint-tenancy form of the conveying deed was controlling and that the decedent grantee could not unilaterally alter the form of that deed by interlineating the words "with sole ownership to the survivor." The funds remaining in the joint accounts at the testator's death were awarded to his widow by right of survivorship.

I

Prior to its repeal in 1971, I.C. § 14–320 read in pertinent part as follows:

"When any testator omits to provide in his will for any of his children, or for the issue of any deceased child, *unless it appears that such omission was intentional,* such child, or the issue of such child, must have the same share in the estate of the testator as if he had died intestate * * *."[1] Emphasis added.

---

[1] The current statutory provision protecting pretermitted children specifically provides that children born or adopted after the execution of the will receive an intestate share unless

The district court granted the testator's children an intestate share under I.C. § 14–320 because it concluded that the testator did not intentionally omit to provide for them in his will. The cross-appellant administrator challenges this conclusion, submitting that (1) the intentional nature of the omission need not be found on the face of the will but rather may be shown by extrinsic evidence, and (2) the testator's intent to omit his children is evinced by his gift of one dollar to "any other person" making a claim to his estate.

■ The first question raised was noticed but not decided in the case of In re Fell's Estate, 70 Idaho 399, 402, 219 P.2d 941 (1950), where no extrinsic evidence was offered at trial and where both parties relied upon the face of the will. The court said, "Therefore, we are not called upon to determine whether, under the provisions of Section 14–320, I.C., extrinsic evidence can be introduced to show the intention of the testator. On this question the authorities are divided." *Id.*

An annotation on point summarizes in the following manner the cases decided under statutes like I.C. § 14–320:

"Under statutes providing that an omitted child, or issue of a deceased child, should be entitled to a portion of the testator's estate, 'unless it appears that such omission was intentional,' the courts, except in California and Oklahoma, have uniformly held or recognized that extrinsic evidence was admissible to prove that the testator intended to disinherit an omitted child." Annot., 88 A.L.R.2d 616, 629 (1963).

Cited in support of the alleged uniformity of holdings are cases from only six states: Maine, Montana, Nevada, North Dakota, South Dakota, and Utah. *Id.* at 629–630 (1963, Later Case Service 1968, 1972). We are more impressed, however, by the rationale supporting the minority rule, as

---

"it appears *from the will* that the omission was intentional." I.C. § 15–2–302 (effective July 1, 1972) (emphasis added).

set forth in the early landmark California case of In re Estate of Garraud, 35 Cal. 336, 340–342 (1868) (decided at a time when California's statute, since altered, was substantially identical to I.C. § 14–320):

> "It may be stated as a general proposition, not open to controversy, that wills, like other written instruments, cannot be varied, altered, added to, or contradicted by parol evidence. * * *

> * * * * * *

> "* * * In construing the statute, we assume that the Legislature was familiar with [this common law rule]; and there is no reason to infer that it intended to relax it. On the contrary, the whole Act relating to wills evinces the vigilance with which it was intended to guard and protect from fraud the most solemn act of the testator's life. * * * The statute contains minute provisions as to the mode of executing or revoking a will * * *.

> "These provisions exhibit the intention of the Legislature not only to adhere to the safeguards which the common law provided as a protection against fraud, but rather to increase and strengthen them by new enactments.

> "With this view, nothing short of an explicit enactment, leaving no room for construction, would lead us to the conclusion that the Legislature intended to substitute for the written will, as the exponent of the testator's intentions, *the loose and always uncertain evidence of acts and declarations resting in parol, and which are liable to be perverted by the frail memories, obtuse understandings, or fraudulent motives of persons called to testify after the death of the testator.* * * *

> "* * * When the will is so often referred to as affording the only evidence of the testator's intentions, it is incredible that the Legislature designed * * * to make the omission to name the children in the will an exception to the general rule, and to allow parol proof in that particular excepted case. There could be no just ground for such an exception, founded either on reason or public policy; and we are by no means inclined to favor a construction the tendency of which would be to disinherit minor children on proof that the testator orally declared intentions and purposes which do not appear in his will." Emphasis added.

In discussing statutes providing that an omitted child shall take "unless it appears that such omission was intentional," Professors Bowe and Parker, in their revision of Page's treatise on the law of wills, discuss the extrinsic evidence issue as follows:

> "Does a statute of this type intend to leave the question of testator's actual intention to be proved by evidence outside of the will, including direct evidence of testator's intention; or does it intend that the child shall take unless testator's intention to disinherit him appears on the face of the will? It is this question on which we find the conflict of authority. *In view of the evident intention of the legislature to modify prior rules of law so as to prevent the intention of testator from having any effect unless it is expressed in the form prescribed by the Wills Act, it is difficult to believe that the legislature intended to create a new case in which testator's actual intention, not expressed in the form prescribed by the Wills Act, should determine whether the omitted child should take or not.* Accordingly some courts have held that testator's intention to exclude the child is inoperative unless it appears on the face of the will. The statute, however, only uses the word 'appears' or some word of similar import, without indicating where or how it must appear; and, accordingly, some courts have held that it may be shown by direct evidence of testator's intention, as expressed in oral declarations and the like." 2 Bowe-Parker: Page on Wills 554 (1960) (emphasis added).

Although we recognize that authority to the contrary does exist, we nevertheless adopt the view that extrinsic evidence is not admissible to show the testator's intention to omit testamentary provision for a child.[2]

The cross-appellant administrator argues alternatively that the testator's children were not preterminated because the testator's intent to omit them is shown by the will's provision giving one dollar to "any other person" making a claim to the testator's estate. The testamentary clause relied upon by the administrator is similar to that relied upon in the California case of In re Price's Estate, 56 Cal.App.2d 335, 132 P.2d 485 (1942), cited with approval in the Idaho case of In re Fell's Estate, *supra,* wherein this Court summarized the holding of the *Price* case as follows:

> "In the case of In re Price's Estate, supra, the testatrix died leaving as heirs at law, two living sons and two grandchildren, the issue of a deceased son. The testatrix bequeathed all her property to her two living sons to be divided between them at her death, share and share alike. The will also contained this clause: 'I purposely refrain from leaving anything by this my last will and testament to any other person or persons, and in the event that any other person or persons shall either directly or indirectly contest this my last will and testament I give to any such person or persons contesting said will the sum of $1 and no more, hereby declaring that I have only at this date two surviving children, to wit: my said two sons above named.' [56 Cal.App.2d 335, 132 P.2d 486.]

> "The court said that 'It must appear upon the face of the will, not only that

the omission was intentional, but "the words of the will must show that the testator has the persons omitted in his mind, and having them so in his mind, has omitted them from the provisions of the will." ' The court thereupon held that the grandchildren were entitled to share in the estate." 70 Idaho at 405, 219 P.2d at 944.

We conclude that the provision giving one dollar to any other person making a claim to the estate does not indicate that the testator had his children in mind at the time of executing his will and does not indicate that he thereby intentionally omitted them. *See also* Estate of Torregano, 54 Cal.2d 234, 5 Cal.Rptr. 137, 352 P.2d 505, 88 A.L. R.2d 597 (1960).

## II

The district court found that both the testator and his wife deposited their separate funds and their community income into their joint bank accounts with the intent of conferring a gift upon the other. The court therefore concluded that upon deposit in these accounts, the funds deposited became property owned in joint tenancy with the right of survivorship. In their appeal, the testator's children challenge this conclusion and the finding of mutual donative intent upon which it is based.[3]

The testator's children rely upon the following principles, delineated in the case of In re Chase's Estate, 82 Idaho 1, 348 P.2d 473 (1960) (only three judges participated in the opinion, and one was a district judge), the continuing validity of which is not challenged here:

(1) Although a joint tenancy survivorship bank account may be considered as an agreement between the named depositors and the bank, the statute authorizing such

---

2. We intimate no opinion on the converse issue of whether extrinsic evidence is admissible to prove a testator's *lack* of intent to omit from his will any provision for a presumptive heir. *See* Estate of Torregano, 54 Cal.2d 234, 5 Cal.Rptr. 137, 352 P.2d 505, 88 A.L. 2d 597 (1960) (decided under a statute providing that an omitted child shall take "unless it appears *from the will* that such omission was intentional"—emphasis added).

3. Whether California law should have been applied in determining the status of funds deposited in the California account while the parties were residing there is a question which was neither raised below nor argued on appeal. Hence, we do not consider the issue. Church v. Roemer, 94 Idaho 782, 498 P.2d 1255 (1972); *see* White v. White, 94 Idaho 26, 480 P.2d 872 (1971).

accounts (I.C. § 26–1014) is intended primarily to protect banks and not to determine the rights of the depositors or of those claiming under them. In re Chase's Estate, *supra,* 82 Idaho at 9–10, 348 P.2d 473.[4]

(2) Nothing in I.C. § 26–1014 creates a conclusive presumption that the ownership of the funds deposited in any such account shall become the property of the survivor upon the death of his cotenant. In re Chase's Estate, *supra,* 82 Idaho at 10, 348 P.2d 473.[5]

(3) Whether a bank account is held in joint tenancy with right of survivorship depends on the intention of the parties, determined in the light of all the circumstances; notwithstanding form, a joint tenancy is not created where the account was made joint purely for convenience and without the intent to create any property interests. In re Chase's Estate, *supra,* 82 Idaho at 8, 348 P.2d 473.[6]

(4) Where one party deposits money in a joint account and thereafter a question of the depositor's intent arises, the party asserting the gift must prove all the elements of a gift, except irrevocable delivery, by clear and convincing evidence. In re Chase's Estate, *supra,* 82 Idaho at 9, 348 P.2d 473.[7]

■ Relying upon the so-called "dead man's statute" (I.C. § 9–202(3)), the testator's children contend that the testimony of the testator's wife was inadmissible to prove his donative intent in depositing separate and community funds in the couple's joint accounts. Section 9–202(3), Idaho Code, reads as follows:

"*Who may not testify.*—The following persons cannot be witnesses:

\* \* \* \* \* \*

"3. *Parties* or *assignors of parties* to an action or proceeding, or *persons in whose behalf an action or proceeding is prosecuted* against an executor or administrator, *upon a claim or demand against the estate* of a deceased person, as to any communication or agreement, not in writing, occurring before the death of such deceased person." Emphasis added.

The children's contention must fail, for two reasons: First, the testator's wife is not a party to this action (or an assignor of a party), and she is not a person in whose behalf an action has been *prosecuted against an administrator.* Second, this is not a proceeding *upon a claim or demand against the estate,* since the children's claim to a share of the estate as pretermitted heirs "is not a claim or demand against the estate of a deceased person within the meaning of the statute." In re Stone's Estate, 77 Idaho 63, 68, 286 P.2d 329, 331, 54 A.L.R.2d 1092 (1955); *see* Annot., 54 A. L.R.2d 1103, 1131 (1957); *cf.* In re Kimble's Estate, 73 Nev. 25, 307 P.2d 615, 616 (1957) ("The proceedings did not involve a claim against the estate which would tend to reduce or impair the estate, but is rather a dispute between living persons as to who was entitled to share in the estate.") For both of these reasons, I.C. § 9–202(3) is not applicable to the testimony given by the testator's wife in the proceeding below.

■ The testator's children further contend that the decedent-depositor's donative intent was not proven by clear and convincing evidence. In this jurisdiction, whether a "clear and convincing" burden of proof has been met is a question for the trier of facts to decide in the first instance. Resource Engineering, Inc. v. Siler, 94 Idaho 935, 500 P.2d 836 (1972). A review of the record in this case supports the trial court's holding that the evidence was sufficient to sustain a finding that the decedent-depositor's donative intent was proven in a clear and convincing manner.

For the foregoing reasons, we sustain the district court's determination that the

4. *Cf.* I.C. §§ 15–6–108, 15–6–109 (effective July 1, 1972).

5. *Cf.* I.C. § 15–6–104(e) (effective July 1, 1972).

6. *See* Annot., 43 A.L.R.3d 971, 988 (1972); *cf.* I.C. § 15–6–104(a), (e).

7. *Cf.* I.C. § 15–6–104(a).

funds deposited in the couple's joint accounts were owned in joint tenancy and subject to an effective right of survivorship. It follows, of course, that any money remaining in these accounts passed to the testator's wife by right of survivorship upon his death.

## III

One of two remaining questions has been raised by the cross-appellant administrator, who contends, in regard to the parcel of real property purchased with joint tenancy funds, that the district court erred in concluding that the testator and his wife owned their equity in the property as tenants in common. The administrator submits that this property, having been purchased with joint tenancy funds, was also held in joint tenancy with right of survivorship at the testator's death. With this contention we do not agree.

The common law presumption attending the creation of a concurrent ownership in land was that the parties intended to create a joint tenancy. 4 G. W. Thompson, Real Property § 1775, p. 9 (1961 Replacement). However, because of potential injustices to creditors and other considerations, the joint tenancy concept fell from favor and today, a majority of American jurisdictions have enacted statutes providing that a conveyance to two or more persons is presumed to create a tenancy in common. W. J. Brockelbank, The Community Property Law of Idaho § 3.10, p. 227 (1962). Idaho is with the majority of states, having early adopted two statutes favoring tenancies in common over joint tenancies. Idaho Code section 55–508, originally enacted by the territorial legislature in 1864, in pertinent part provides: "Every interest in real estate granted * * * to two or more persons * * * constitutes a tenancy in common, unless expressly declared in the grant * * * to be otherwise." Section 55–104 of the Idaho Code, first enacted in 1887, provides in pertinent part that: "Every interest created in favor of several persons in their own right is an interest in common, unless * * * declared in its

creation to be a joint interest, or unless acquired as community property." In addition, another dimension is added to any consideration of the status of property acquired by husband and wife during coverture by I.C. § 32–906, which provides, in part:

"All * * * property [except that acquired by gift, bequest, devise, descent or as proceeds of separate property] acquired after marriage by either husband or wife, including the rents and profits of the separate property of the husband and wife, is community property * * *."

The effect of the presumption that all property acquired during marriage is community property, Stahl v. Stahl, 91 Idaho 794, 797, 430 P.2d 685 (1967), will be discussed *infra*.

■ The warranty deed to the Bonner County land conveyed the property to "Nelson H. Cooke and Vera Darlene Cooke, husband and wife." No mention was made in the grant of a joint tenancy. It was not until after the deed had been signed by the grantors and delivered, that Mr. Cooke interlineated the words, "with sole ownership to the survivor," after the words, "husband and wife," appearing in the deed.

■ Cross-appellant administrator makes a two-pronged argument to support his contention that the real property was held in the form of joint tenancy. First, he submits that we should look to the intention of Mrs. Cooke and the testator, to overcome the form of the deed. No Idaho case has been cited by cross-appellant to support his theory that a husband and wife can, by the informal expression of their intent to do so, adopt the joint tenancy form of ownership for real property, notwithstanding the fact that there was no declaration in the instrument of conveyance of the joint tenancy interest. Given the statutory disfavor of joint tenancies and the statutory requirement of formality in their creation, the mere informal expression of intent or desire to hold real property in

joint tenancy is not sufficient to create such an estate in land between husband and wife in Idaho, absent explicit language in the instrument of conveyance.[8]

In California, " 'it is well settled * * * that the form of the instrument under which a husband and wife hold title is not conclusive as to the status of the property and that property acquired under a joint tenancy deed may be shown to be actually community property or the separate property of one spouse according to the intention, understanding or agreement of the parties'." Gudelj v. Gudelj, 41 Cal. 2d 202, 259 P.2d 656, 662 (1953) quoting Socol v. King, 36 Cal.2d 342, 223 P.2d 627, 629 (1950). Appellant cites California cases embodying the above-stated principle to support the converse proposition, namely, that property acquired by husband and wife may be shown to be held in joint tenancy, according to the intention, understanding or agreement of the parties, and regardless of the form of the deed. None of the cases cited by appellant, however, and no other California case which has come to our attention supports this view. "Transmutation," it would appear, is a one-way street running away from, but not towards, joint tenancy. In fact, "it has been stated many times [in California] that a joint tenancy cannot be created by oral agreement in either real property * * * or in personal property." Donovan v. Donovan, 223 Cal.App.2d 691, 36 Cal.Rptr. 225, 229 (1964). Furthermore, Idaho has not, at this time, recognized the transmutation doctrine. *See* Hooker v. Hooker, 95 Idaho 518, 511 P.2d 800 (1973).

 It is, of course, possible in Idaho for property ostensibly held as community property to be shown to be separate property, if the source of the funds with which the property was purchased was separate property. Cargill v. Hancock, 92 Idaho 460, 444 P.2d 421 (1968). Appellant argues by analogy that because the funds used for the purchase of the disputed real property in this action were held in joint tenancy, the property itself acquired a joint tenancy character. Lacking Idaho authority for such an application of the "source doctrine," cross-appellant administrator has again turned to the California cases for support. However, our research would seem to indicate that in California, property purchased with joint tenancy funds retains the joint tenancy characteristic only if the newly acquired property is *personal* property. *See* Taylor v. Crocker-Citizens National Bank, 258 Cal.App.2d 682, 65 Cal.Rptr. 771, 774–775 (1968); In re Hoefflin's Estate, 176 Cal.App.2d 619, 1 Cal.Rptr. 642, 648 (1959); In re Zaring's Estate, 93 Cal.App.2d 577, 209 P.2d 642 (1949); Fish v. Security-First Nat. Bank of Los Angeles, 31 Cal.2d 378, 189 P.2d 10 (1948); Wheeland v. Rodgers, 20 Cal.2d 218, 124 P.2d 816 (1942); In re Kessler, 217 Cal. 32, 17 P.2d 117 (1933). We make no comment on the applicability of this California doctrine in Idaho. Although Socol v. King, 36 Cal.2d 342, 223 P.2d 627 (1950), cited by cross-appellant administrator, contains language which might suggest that the use of joint tenancy purchase funds can create a joint tenancy interest in real property in California, it is clear from reading the case in its entirety that the decision turned on the fact that the property in question had been conveyed by a *joint tenancy deed.*

 The district court was correct when it determined that the real property in question was not community property, but instead that the interest in the property acquired by the spouses before Mr. Cooke's death was held in tenancy in common. Although it is to be presumed that property acquired during a marriage is community

---

8. Professor Brockelbank has suggested that for a joint tenancy in real property to be created between husband and wife in Idaho, careful practice would include not only specific reference to the creation of a joint tenancy in the instrument of conveyance, but also the recording of an agreement or acknowledgment indicating a knowing choice by the spouses of the joint tenancy form of ownership. W. J. Brockelbank, The Community Property Law of Idaho § 3.10, p. 239 (1962).

property, Stahl v. Stahl, *supra,* 91 Idaho at 797, 430 P.2d 685, that presumption can be rebutted with proof of "reasonable certainty and particularity" that the funds used to acquire the property came from a separate source. Evans v. Evans, 92 Idaho 911, 918, 453 P.2d 560 (1969); Stahl v. Stahl, *supra.* Property held in joint tenancy between husband and wife is not community property. If a true joint tenancy exists, created according to statute, each spouse owns his or her respective interest as separate property. Musker v. Gil Haskins Auto Leasing, Inc., 18 Ariz.App. 104, 500 P.2d 635 (1972); Russo v. Russo, 80 Ariz. 365, 298 P.2d 174 (1956); Collier v. Collier, 73 Ariz. 405, 242 P.2d 537 (1952); King v. King, 107 Cal.App.2d 257, 236 P.2d 912 (1951); *see* Siberell v. Siberell, 214 Cal. 767, 7 P.2d 1003 (1932). The funds paid on the purchase price of the property prior to Cooke's death thus consisted of separate property of Mr. and Mrs. Cooke in equal shares. Mr. and Mrs. Cooke each owned, as his or her separate property, an undivided half interest in the equity acquired in the land prior to Mr. Cooke's death. However, because of non-compliance with the mandate of the Idaho statutes regarding the creation of joint tenancy interests, the spouses' separate shares of such equity were not held in joint tenancy, but in tenancy in common, as found by the district court.

Upon Mr. Cooke's death, ownership of the funds remaining in the couple's joint tenancy bank accounts devolved on Mrs. Cooke by right of survivorship and became her sole and separate property. Following the death of Mr. Cooke, Mrs. Cooke paid the sum of $13,463.30 from these separate funds to retire the remaining indebtedness against the property. Subtracting Mrs. Cooke's separate interest from the total value of the property ($25,000) the district court ascertained that the equity which had been acquired by the couple prior to Mr. Cooke's death was $11,536.70.

Mr. Cooke's estate was held to be entitled to one-half of this amount, because Mr. Cooke's undivided one-half ownership of the $11,536.70 equity was his separate property. The Idaho statute in effect at the time of Mr. Cooke's death, on pretermitted heirs, I.C. § 14–320, discussed *supra,* provided that such heirs must have the same share in the estate of the testator as if he had died intestate. Under the applicable Idaho statute on intestate succession, I.C. § 14–103 (repealed in 1971) the district court determined that each of the appellant children was entitled to one-third of one-half of the value of the equity in the property at the time of Cooke's death, or $1,922.78 each. Alternatively it was decreed that each of said pretermitted heirs owned an undivided one-sixth interest in the real estate, subject to a prior indebtedness in favor of Mrs. Cooke in the sum of $13,463.30, with the result that Mrs. Cooke owns an undivided two-thirds interest in the real estate.

Finding no error in the determination of the district court, we affirm its judgment regarding the characterization and distribution of the real property.

## IV

The final remaining question was raised by the appellant children who contend that the district court erred in not requiring the administration of the testator's personal property in Idaho. It is not completely clear from the record of what this personal property consisted or where it was located. However, it appears that it included a pick-up truck, a trailer house, and an automobile. The district court based its refusal to require administration of the testator's personal property in Idaho on its conclusion that the testator was no longer a domiciliary of Idaho at the time of his death, inasmuch as he had left Idaho with the intention of locating elsewhere. This conclusion was erroneous as a matter of law. The Cookes had moved to Idaho in 1965 with the intention of remaining here permanently, thus establishing Idaho as their legal domicile. Finding the Idaho

winter too harsh, the Cookes were searching for a new place to live along the Colorado River in either Arizona or California, when Mr. Cooke died. It is well established that once a domicile of choice is established, it persists until another is legally acquired. McMillion v. McMillion, 497 P. 2d 331 (Colo.Ct.App.1972); In re Estate of Moore, 68 Wash.2d 792, 415 P.2d 653 (1966); In re Sherrill's Estate, 92 Ariz. 39, 373 P.2d 353 (1962); Restatement (Second), Conflict of Laws § 19 (1971). Mr. Cooke, having acquired no new domicile, was still domiciled in Idaho at the time of his death.

Except in regard to its determination concerning jurisdiction of the administration of the testator's personal property in Idaho, the judgment of the district court is affirmed. The cause is remanded for further proceedings in accordance with this opinion.

No costs allowed.

SHEPARD, McQUADE, and McFADDEN, JJ., concur.

BAKES, Justice (concurring in part and dissenting in part).

I agree generally with the analysis of the majority opinion, particularly the rule that a person claiming the right of survivorship in a joint tenancy bank account must prove by *clear and convincing evidence* the donative intent of the person who deposits his separate property in that bank account. In my opinion, the administrator did not carry that burden of proof, and the court should have held that the bank account and the real property were the separate property of Nelson Cooke, thereby giving the pretermitted children an intestate share in those items of property. Any relaxing of the requirement of clear and convincing evidence to prove a gift in joint tenancy bank account situations will only succeed in compounding the legal problems inherent in estate planning and dispositions.

ON PETITION FOR REHEARING

DONALDSON, Justice.

The petition for rehearing in the above entitled action was granted and reargued. The Court has reviewed the record, considered the arguments presented by counsel, and we continue to adhere to the views expressed and the conclusion reached in our earlier opinion.

SHEPARD, C. J., and McQUADE and McFADDEN, JJ., concur.

BAKES, J., adheres to his concurrence and dissent in the earlier opinion.