[No. 15877-2-III.    Division Three.    May 5, 1998.]

*In the Matter of the Marriage of* L. DIANNE ZAHM, *Respondent,* and KERMIT A. ZAHM, *Appellant.*

*W. Scott Lowry* and *Christopher M. Constantine*, for appellant.

*Albert J. Golden* of *Golden & Knowlton, P.S.*, for respondent.

BROWN, J. — Today we decide for the first time in Washington whether indivisible social security benefits can be considered by a trial court when making provision in a marital dissolution for property division or maintenance. We hold they can. Because of the trial court's error in characterizing the benefits as community property instead of separate property was harmless, we decide there was no

abuse of trial court discretion in its property division or maintenance award. We affirm.

## FACTS

Idaho residents Kermit and Diane Zahm were married June 1978 in Las Vegas, Nevada. Mr. Zahm then moved into Mrs. Zahm's Idaho home. In 1984, the family moved into an Idaho townhouse owned by Mr. Zahm. Mrs. Zahm sold her home and deposited the money in a separate bank account for her and her daughters. Mrs. Zahm left the townhouse in 1986 when the couple separated and relocated to Walla Walla, Washington. Back in Idaho, dissolution proceedings began, but were dismissed when the parties reconciled in 1987.

The parties then lived together in a Walla Walla apartment. They purchased a Walla Walla home on Bandra Drive in 1990 by combining their separate funds for a down payment and signing a promissory note for the remaining purchase price.

Two years prior to purchasing the Bandra Drive home, Mr. Zahm sold the townhouse in Idaho to Elizabeth Jackson. Mr. Zahm placed Mrs. Zahm's name along with his on the promissory note and deed of trust. Ms. Jackson made her monthly payments to a First Interstate Bank of Washington account owned by both Mr. and Mrs. Zahm.

In 1991, Mr. Zahm assigned a fraction of his interest in Ms. Jackson's note for $32,400. This money was deposited into Mr. Zahm's checking account at the Overland Park Plaza Branch of the First Interstate Bank of Idaho along with his disability benefits, army retirement benefits, State of Idaho retirement benefits and social security benefits. Mrs. Zahm and Ty Zahm, Mr. Zahm's son, were also on the signature card for this account. In 1993, Mr. Zahm sold his remaining interest in the Jackson contract for $23,554.20, which he deposited into the Overland Park account. In 1994, Mr. Zahm withdrew $51,223.57 from the Overland Park account and paid off the mortgage on the Bandra Drive home.

The parties separated on January 30, 1995. Three days later, Mrs. Zahm petitioned for dissolution. On May 20, 1996, the trial court dissolved the marriage. It characterized the Bandra Drive home and the Overland Park account as community property. Also under the heading: "Community Property" the court noted Mr. Zahm earned 61 percent of his social security benefits during the marriage. The court also awarded Mrs. Zahm Tier I and Tier II maintenance. Under Tier I, Mrs. Zahm was to receive $300 per month in lieu of her interest in Mr. Zahm's military and state retirement benefits. Under Tier II, Mrs. Zahm received an additional $1,100 per month until a $30,000 judgment awarded Mr. Zahm was paid off. Then, Mrs. Zahm was to receive $900 a month until she reached the age of 62, and then $500 a month. Mr. Zahm has appealed.

## ANALYSIS

A. Social Security Benefits. We first consider whether the trial court erred when listing Mr. Zahm's social security benefits as community property in view of federal law precluding their division. Next, if so, whether the error was harmless. Finally, regarding social security benefits, we must decide whether a trial court can circumvent the unavailability of social security benefits by awarding other community property to the nonowning spouse as a setoff.

■■ The trial court has broad discretion to distribute marital property. *In re Marriage of Tower*, 55 Wn. App. 697, 700, 780 P.2d 863 (1989), *review denied*, 114 Wn.2d 1002 (1990). We review for a manifest abuse of this discretion. *In re Marriage of Washburn*, 101 Wn.2d 168, 179, 677 P.2d 152 (1984). The standard requires proof the judge's decision was manifestly unreasonable or based on untenable grounds or for untenable reasons. *Tower*, 55 Wn. App. at 700.

■ Section 407(a) of the Social Security Act provides in part: "The right of any person to any future payment under this subchapter shall not be transferable or assign-

able" and thus, generally makes moneys payable under the social security laws indivisible. 42 U.S.C. § 407(a) (Supp. II 1996). Section 659(a) provides an exception by permitting the assignment of social security benefits to pay for alimony or child support. However, section 659(i)(3)(B)(ii) expressly excludes any payment to a spouse in compliance with any community property settlement, equitable distribution of property, or other division between spouses or former spouses.

In *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 99 S. Ct. 802, 59 L. Ed. 2d 1 (1979), the United States Supreme Court held the Supremacy Clause precluded California's community property laws from overcoming the Federal Railroad Retirement Act. The Court likened railroad retirement benefits to social security benefits in that both are non-contractual agreements. *Id.* at 575. The Court then concluded federal railroad retirement benefits were not subject to distribution in a dissolution proceeding. *Id.* at 584.

Washington courts have not addressed the issue of federal preemption as it relates to social security benefits. However, the Arizona and California appellate courts have held that social security benefits are not community property, and, therefore, not subject to division. *See Luna v. Luna*, 125 Ariz. 120, 608 P.2d 57, 60 (1979); *In re Marriage of Hiller-man*, 109 Cal. App. 3d 334, 345, 167 Cal. Rptr. 240 (1980). If they are not community property, they must be separate property. Nevertheless, all property, community and separate, is before the court when considering what is just and equitable in the disposition of property and liabilities. RCW 26.09.080.

Based on the holdings of the United States Supreme Court and other jurisdictions, we conclude federal statutes regarding social security benefits preempt state community property laws. We hold the social security benefits are the separate indivisible property of the spouse earning them. This holding ensures the benefits actually reach the beneficiary and protects the benefits from the legal process. *Hisquierdo*, 439 U.S. at 584. Here, the trial court should not

have listed Mr. Zahm's social security benefits as "Community Property." However, the trial court acknowledged in its oral decision that social security benefits were not to be apportioned. Therefore, it was harmless error to list the benefits under "Community Property."

■ The crucial issue then becomes whether a trial court can still consider social security benefits as part of the parties' property and liabilities when deciding a just and equitable distribution of their property. Despite the language in *Hisquierdo*, 439 U.S. at 588 that "[a]n offsetting award . . . would upset the statutory balance and impair petitioner's economic security just as surely as would a regular deduction from his [or her] benefit check," jurisdictions are split on this issue.

In *Mahoney v. Mahoney*, 425 Mass. 441, 681 N.E.2d 852, 856 (1997), the Supreme Judicial Court of Massachusetts held a judge may consider a spouse's anticipated social security benefits as one factor, among others, in making an equitable distribution of marital assets. *See also In re Marriage of Brane*, 21 Kan. App. 2d 778, 908 P.2d 625 (1995); *Pongonis v. Pongonis*, 606 A.2d 1055 (Me. 1992); *Rudden v. Rudden*, 765 S.W.2d 719 (Mo. Ct. App. 1989).

Alternatively, the Supreme Court of Nevada in *Wolff v. Wolff*, 112 Nev. 1355, 929 P.2d 916, 921 (1996) held a court may not consider such benefits when dividing a marital estate. *See also Olson v. Olson*, 445 N.W.2d 1 (N.D. 1989); *In re Marriage of Swan*, 301 Or. 167, 720 P.2d 747 (1986). Washington courts have yet to address this issue.

A significant argument for not allowing social security benefits to be considered is that future benefits would be hard to evaluate. Furthermore, a recipient could die before he or she receives the benefits. These are practical, but not insurmountable problems a trial court should consider. However, we need not resolve them here because Mr. Zahm is currently receiving his social security benefits.

When deciding a just and equitable distribution, relevant factors include: "(1) The nature and extent of the community property; (2) The nature and extent of the separate

property; (3) The duration of the marriage; and (4) The economic circumstances of each spouse at the time the division of property is to become effective . . . ." RCW 26.09.080. A trial court could not properly evaluate the economic circumstances of the spouses unless it could also consider the amount of social security benefits currently received. We agree with the authorities cited from Massachusetts, Kansas, and Missouri and hold the trial court did not abuse its discretion in considering Mr. Zahm's social security benefits when evaluating the economic circumstances of the parties.

■ B. Characterization of Property. We consider whether the trial court erred in characterizing the Idaho bank account and the Bandra Drive residence as community property. Washington has long accepted the principle that the character of property is determined under the law of the state where the couple is domiciled at the time of its acquisition. *In re Marriage of Landry*, 103 Wn.2d 807, 810, 699 P.2d 214 (1985); *Rustad v. Rustad*, 61 Wn.2d 176, 179, 377 P.2d 414 (1963). Since the Overland Park account was established while the parties were domiciled in Idaho, Idaho law governs.

In Idaho, it is presumed all property acquired by spouses during marriage is community property. *Weilmunster v. Weilmunster*, 124 Idaho 227, 858 P.2d 766, 771 (1993) (citing *Stahl v. Stahl*, 91 Idaho 794, 430 P.2d 685, 688-89 (1967)). However, if a spouse has separate property and that property is identifiable and traceable, commingling of such separate property with community property will not convert the separate property into community property. *Id.* The spouse asserting that the assets are separate has the burden of proving the property is such with reasonable certainty and particularity. *Weilmunster*, 858 P.2d at 772 (citing *Houska v. Houska*, 95 Idaho 568, 512 P.2d 1317, 1319 (1973)).

Here, both Mr. and Mrs. Zahm's names were on the Overland Park account. Furthermore, from the accounting provided by Mr. Zahm, there was commingling of com-

munity property and separate property. Mr. Zahm also deposited other community property funds into this account and used this account to pay off community debts.

Based on the record, the trial court had tenable grounds to conclude under Idaho law the Overland Park account had been so commingled that the account became community property. Even if all the funds in the account could be traced with certainty and particularity rendering the account to be Mr. Zahm's separate property, it was still within the trial court's discretion to divide it under RCW 26.09.080 to reach a just and equitable distribution. Either way, the court did not abuse its discretion in characterizing the Idaho bank account as community property.

██ We next consider the Bandra Drive property. In Washington, property acquired during marriage is presumed to be community property. *In re Marriage of Short*, 125 Wn.2d 865, 870, 890 P.2d 12 (1995). However, this presumption may be rebutted with clear, cogent, and convincing evidence. *In re Marriage of Olivares*, 69 Wn. App. 324, 336, 848 P.2d 1281, *review denied*, 122 Wn.2d 1009 (1993). Mr. Zahm contends the "mortgage rule" rebuts this presumption.

The mortgage rule is used to assist in characterizing assets acquired over time, by a combination of community and separate funds. Harry M. Cross, *The Community Property Law in Washington (Revised 1985)*, 61 WASH. L. REV. 13, 39-49 (1986). The mortgage rule focuses on whether the parties become obligated to make payments in order to acquire an asset. Where there is such an obligation, the character of the property is determined as of the date of its acquisition, by the character of the down payment and any credit pledged. Mr. Zahm contends his separate property was used as credit to secure the home loan, therefore, the home should be his separate property.

██ Assuming Mr. Zahm is correct, his argument neglects the fact both parties contributed their separate property toward the down payment. Therefore, Mr. Zahm's assertion that his separate property was used as credit to

secure the loan on the home does not alone convincingly rebut the presumption that the home is community property. This is a tenable ground for the trial court to deem the home community property. Accordingly, the trial court did not abuse its discretion in characterizing the home as community property.

■ C. Maintenance. Did the trial court err by awarding Mrs. Zahm maintenance? A trial court has discretion to grant a party maintenance in an amount it deems just after considering all relevant factors. RCW 26.09.090(1); *In re Marriage of Williams*, 84 Wn. App. 263, 267-68, 927 P.2d 679 (1996), *review denied*, 131 Wn.2d 1025 (1997). On appeal, an award of maintenance is reviewed for an abuse of discretion. *In re Marriage of Mathews*, 70 Wn. App. 116, 123, 853 P.2d 462, *review denied*, 122 Wn.2d 1021 (1993). Here, Mr. Zahm argues the court abused its discretion in awarding Mrs. Zahm maintenance by not applying the factors in RCW 26.09.090 and relying on Mr. Zahm's social security benefits in making the award.

■ ■ In its oral decision on November 8, 1996, the court distinctly set forth its analysis of the factors in RCW 26.09.090. The court discussed Mr. and Mrs. Zahm's incomes and resources, the age of the parties, the parties' medical conditions, and the ability of Mr. Zahm to pay maintenance. The record supports the reasoning; thus, tenable grounds existed for the court to decide Mrs. Zahm's need for maintenance and Mr. Zahm's ability to pay. We also conclude it was not error for the trial court to consider the social security benefits when deciding Mrs. Zahm's maintenance award for the same reasons discussed when considering the property division. Additionally, as we just discussed, the trial court properly applied the RCW 26.09.090 factors. Accordingly, we hold the trial judge did not abuse his discretion in making the award of maintenance.

■ ■ D. Attorney Fees. Mrs. Zahm has requested an award of attorney fees. RCW 26.09.140 and RAP 18.1 allow such fees on appeal. The primary consideration for award-

ing attorney fees in a dissolution proceeding is if it would be equitable. *In re Marriage of Van Camp*, 82 Wn. App. 339, 342, 918 P.2d 509, *review denied*, 130 Wn.2d 1019 (1996). Here, both parties are in a position to pay their own fees. Therefore, Mrs. Zahm's request should be denied.

## CONCLUSION

A trial court when making provision in a marital dissolution for property division or maintenance can consider social security benefits notwithstanding the indivisibility of these benefits under federal law. Therefore, the trial court did not err when considering the social security benefits as a relevant factor when deciding the property division and maintenance issues. Although the trial court should have characterized the social security benefits as Mr. Zahm's separate property because of federal preemption, the error was harmless. The trial court did not abuse its discretion when deciding the property division and maintenance issues. Accordingly, we affirm the trial court.

KURTZ, A.C.J., and SWEENEY, J., concur.

Review granted at 136 Wn.2d 1020 (1998).