[No. 66895-7. En Banc.]
Argued February 24, 1999. Decided June 17, 1999.
*In the Matter of the Marriage of* L. DIANNE ZAHM, *Respondent*, and KERMIT A. ZAHM, *Petitioner.*

*W. Scott Lowry* and *Christopher M. Constantine*, for petitioner.

*Golden & Knowlton, P.S.*, by *Albert J. Golden*, for respondent.

JOHNSON, J. — This case primarily involves the judicial characterization of social security payments when dividing property in a marital dissolution action. We must decide whether the trial court properly characterized petitioner's social security benefits, an Idaho bank account, and a home in Walla Walla, Washington. Petitioner also claims the trial

court erred in awarding maintenance to respondent. We affirm the Court of Appeals.

## FACTS

Petitioner and respondent married in June 1978. They separated in 1986 and divorced in 1987. Approximately 18 months later, the Zahms reunited and the 1987 divorce decree was set aside and the action dismissed. The couple permanently separated in 1995. As part of the Zahms' marital dissolution proceeding, the trial court characterized and distributed the couple's separate and community property.

Both petitioner and respondent brought separate property to their 1978 marriage. Prior to her marriage to petitioner, respondent owned a town house in Eagle, Idaho. The Zahms resided at the Eagle, Idaho town house for approximately the first two years of their marriage. Respondent then sold her town house and placed the sale proceeds into bank accounts in her name and the names of her daughters from a previous marriage. In addition to those accounts, respondent also maintained separate accounts for herself and her daughters with New York Life Insurance. At the conclusion of the Zahms' marital dissolution proceeding, the trial court characterized the bank accounts originally established with proceeds of the Idaho town house sale, and the New York Life Insurance account as respondent's separate property.

Petitioner owned a town house in Boise, Idaho prior to marrying respondent. In 1983, while married to respondent, petitioner paid the balance in full on his town house. He then sold that house in 1988. The buyer's monthly payments on the Boise town house were placed in the Zahms' joint First Interstate Bank account in Washington (First Interstate/Washington). The First Interstate/Washington account was also funded by monies from a First Interstate Bank account in Idaho (First Interstate/Idaho). At the conclusion of the Zahms' marital dissolution proceeding,

the trial court characterized the monies in both bank accounts as community property.

In 1990, the Zahms purchased a home in Walla Walla and resided there. The Zahms split the down payment on the house, each paying approximately $9,000, and both signed a promissory note to secure a loan for the home's balance of $54,900. At the time of trial, the Walla Walla home had appreciated to a market value of $107,725. At the conclusion of the Zahms' marital dissolution proceeding, the trial court characterized the Walla Walla home as community property.

In 1991 and 1993, petitioner assigned the interest in the buyer's note for the Boise home to Metropolitan Mortgage. Petitioner received over $55,000 from Metropolitan Mortgage, which was deposited into the First Interstate/Idaho account. The names on the First Interstate/Idaho account's signature card are those of petitioner, respondent and petitioner's son from a previous marriage. Petitioner claimed at trial that respondent's name appeared on the First Interstate/Idaho account exclusively for estate planning purposes and that respondent never signed checks on that account. In 1994, petitioner withdrew $51,223.57 from the First Interstate/Idaho account to pay the balance remaining on the Walla Walla home's mortgage. At the time of trial, the balance remaining in the First Interstate/Idaho account was $6,002.00; the trial court characterized those funds as community property.

At the time of trial, petitioner received monthly income from federal social security, his military retirement plan, his Veterans Administration disability plan, his federal technician's pay, and his Idaho State retirement plan. These income sources totaled $3,762 per month. All these monies were automatically deposited every month into the First Interstate/Idaho Bank account. At the conclusion of the Zahms' marital dissolution proceeding, the trial court characterized these monies as community property. However, the trial court neither assigned nor calculated a future value of these monies as part of the court's property characterization and distribution.

Respondent filed for divorce from petitioner in February 1995. A dissolution trial was conducted in November 1996. The superior court entered its findings of fact, conclusions of law, and a decree of dissolution on May 20, 1996. The court decree, inter alia, characterized the First Interstate/ Idaho account, the Walla Walla home, and petitioner's social security benefits as community property. Petitioner was also ordered to pay maintenance for respondent. Petitioner appealed the trial court's decision. In its opinion, the Court of Appeals agreed with petitioner that the trial court improperly characterized his social security benefits, but found the error to be harmless. The court affirmed the trial court on the remaining issues raised by petitioner. *In re Marriage of Zahm*, 91 Wn. App. 78, 955 P.2d 412 (1998). Petitioner timely appealed.

## ANALYSIS

Petitioner argues the trial court erred when it included petitioner's social security benefits in its distribution of the Zahms' community property. Petitioner argues federal social security law generally makes monies payable under the social security system indivisible and not subject to reassignment. Petitioner contends these restrictions mandate our finding that the trial court's distribution of petitioner's benefits contravened federal law. The Court of Appeals agreed and ruled the trial court erred in listing petitioner's social security benefits as community property; however, the court found the error harmless. We affirm.

██ RCW 26.09.080 governs the disposition of property in marital dissolution cases. That statute instructs trial courts to make a "just and equitable" distribution of the parties' property. The statute's nonexclusive list of factors for consideration by the trial court include the nature and extent of the community property, the nature and extent of the separate property, duration of the marriage, and the resulting economic circumstances of each spouse when the property is divided. RCW 26.09.080. A fair and equitable

division by a trial court "does not require mathematical precision, but rather fairness, based upon a consideration of all the circumstances of the marriage, both past and present, and an evaluation of the future needs of parties." *In re Marriage of Crosetto*, 82 Wn. App. 545, 556, 918 P.2d 954 (1996).

At issue here is the interplay between RCW 26.09.080 and 42 U.S.C. § 407(a) of the Social Security Act (Act), the latter of which forbids transfer or reassignment of "[t]he right of any person to any future payment under this subchapter . . . ." While the Act does permit reassignment of social security benefits to pay for alimony or child support, it categorically excludes any similar payment obligation in conformity with a community property settlement, equitable distribution of property, or other division between spouses or former spouses. 42 U.S.C.A. § 659(i)(3)(B)(ii).

In 1979, the United States Supreme Court held the federal constitution's supremacy clause preempted California's community property laws. *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 590, 99 S. Ct. 802, 59 L. Ed. 2d 1 (1979). The judicial application of California's community property laws, therefore, could not supplant the terms of the federal Railroad Retirement Act of 1974, 45 U.S.C. § 231, 88 Stat. 1305 (Railroad Retirement Act). *Hisquierdo*, 439 U.S. at 590. In its analysis, inter alia, the Supreme Court analogized between Railroad Retirement Act benefits and federal social security benefits holding, inasmuch as both benefits are the products of noncontractual agreements, they are fundamentally similar. *Hisquierdo*, 439 U.S. at 574-75. The Supreme Court ultimately held Railroad Retirement Act benefits are not subject to distribution as property in a dissolution proceeding. *Hisquierdo*, 439 U.S. at 590. Given the Supreme Court's assertion of an affinity between Railroad Retirement Act benefits and federal social security benefits in *Hisquierdo*, we conclude social security benefits themselves are not subject to division in a marital property distribution case. However, this conclusion does not resolve

precisely the exact question presented here because while the trial court did characterize the social security benefits as community property, it did not order an actual distribution of those benefits.

Following *Hisquierdo*, some state appellate courts have held social security benefits are not subject to distribution as community property. In *Luna v. Luna*, 125 Ariz. 120, 123, 608 P.2d 57 (1979), the Arizona Supreme Court held payments received by a spouse in the form of social security disability benefits were the receiving spouse's separate property and should not be characterized as community property. Likewise, in *In re Marriage of Hillerman*, 109 Cal. App. 3d 334, 339-41, 167 Cal. Rptr. 240 (1980), the California Court of Appeals held, although social security plans and private pension plans are similar, peculiarities in the federal social security plan render it insurmountably problematic to characterize and redistribute those benefits as community property, in the manner a court might properly do with private pension plan benefits. The California court also reasoned that problems in identifying social security benefits as community property were evidence of an implicit congressional intent to create a federal retirement benefit that would be immune from division by state courts in marital dissolution proceedings. *In re Marriage of Hillerman*, 109 Cal. App. 3d at 341.

Although extrajurisdictional case law on this issue is scant, we conclude that federal statutes secure social security benefits as the separate indivisible property of the spouse who earned them. This approach ensures that the benefits intended for the beneficiary reach that party and that the benefits are insulated from the occasionally unpredictable fortunes of legal dispute. *Hisquierdo*, 439 U.S. at 584. Therefore, the trial court erred in characterizing petitioner's social security benefits as community property. However, although the trial court initially characterized the social security benefits as community property, the court did not apportion those benefits. Rather, the trial court merely noted under the community property portion

of its findings of fact and conclusions of law that "61% of [petitioner's] social security was earned during marriage." Clerk's Papers at 140.

 Petitioner argues the trial court's initial characterization of his social security benefits as community property was factored into the distribution of the parties' assets, whether the benefits were ultimately apportioned or not. Petitioner would have us hold mere consideration by a trial court of a party's social security benefits in a marital dissolution proceeding is reversible error. We decline to so hold.

In *Hisquierdo*, the respondent had requested the court provide her with "an offsetting award of presently available community property to compensate her for her interest in petitioner's expected [Railroad Retirement Act]'s benefits." *Hisquierdo*, 439 U.S. at 588. The Supreme Court found the proposed arrangement tantamount to the prohibited reassignment of federal benefits: "[a]n offsetting award . . . would upset the statutory balance and impair petitioner's economic security just as surely as would a regular deduction from his [or her] benefit check." *Hisquierdo*, 439 U.S. at 588.

*Hisquierdo* is distinguishable from our case. Here, the trial court did not conduct the kind of valuation of benefits prohibited under *Hisquierdo*. The trial court neither computed a formal calculation of the value of petitioner's social security benefits nor offset a formal numerical valuation into the court's property division via a specific counterbalancing property award to respondent. Thus, the reasoning in *Hisquierdo* does not control the result in the case before us.

While *Hisquierdo* is distinguishable, cases with more similar fact patterns have arisen in other jurisdictions. In 1997, the Supreme Judicial Court of Massachusetts held, although social security old age benefits may not be characterized as part of the marital estate for the purpose of property characterization, a judge may consider a spouse's social security benefits as a factor coequal with

others when determining an equitable division of any distributable marital assets. *Mahoney v. Mahoney*, 425 Mass. 441, 446, 681 N.E.2d 852 (1997). In *Mahoney*, the trial court had considered the husband's anticipated social security old age benefits when distributing the marital assets, ultimately awarding the wife a larger percentage of the marital estate " 'to equalize the standard of living both parties will enjoy in the present and future.' " *Mahoney*, 425 Mass. at 446. This approach was affirmed on appellate review.

Cases similar to *Mahoney* have emerged from other state courts. Some courts have held, while the antireassignment clause of the Social Security Act precludes a trial court from directly dividing social security income in a divorce action, a trial court may still properly consider a spouse's social security income within the more elastic parameters of the court's power to formulate a just and equitable division of the parties' marital property. *In re Marriage of Brane*, 21 Kan. App. 2d 778, 783, 908 P.2d 625 (1995); *Pongonis v. Pongonis*, 606 A.2d 1055, 1058 (Me. 1992); *Rudden v. Rudden*, 765 S.W.2d 719, 720 (Mo. Ct. App. 1989). This approach is consistent with the objectives of RCW 26.09-.080.

While other cases are at odds with the approach taken by the Massachusetts, Kansas and Missouri state courts, these other holdings echo the reasoning in *Hisquierdo* and are, therefore, distinguishable from the subject case. For example, the Supreme Court of Oregon has held a trial court, in its division of marital property, may not properly consider the formal valuation of a spouse's social security benefits. *In re Marriage of Swan*, 301 Or. 167, 171, 720 P.2d 747 (1986); *see also Wolff v. Wolff*, 112 Nev. 1355, 1363, 929 P.2d 916 (1996); *Olson v. Olson*, 445 N.W.2d 1 (N.D. 1989). As noted above, the trial court here did not impermissibly calculate a specific formal valuation of petitioner's social security benefits and award respondent a precise property offset based on that valuation but, rather, merely considered those benefits when determining the parties' relative economic circumstances at dissolution.

In its review of this case, the Court of Appeals adopted the approach of the Massachusetts, Kansas, and Missouri state courts and held it proper that trial courts consider social security benefits in determining the parties' relative economic circumstances at dissolution. The Court of Appeals reasoned that since, under RCW 26.09.080, a trial court making a just and equitable distribution is allowed to consider such relevant and nonexhaustive factors as "(1) The nature and extent of the community property; (2) The nature and extent of the separate property; (3) The duration of the marriage; and (4) *The economic circumstances of each spouse at the time the division of property is to become effective . . .,*"[1] it is, therefore, permissible for a trial court to consider petitioner's social security benefits. "A trial court could not properly evaluate the economic circumstances of the spouses unless it could also consider the amount of social security benefits currently received." *In re Marriage of Zahm*, 91 Wn. App. at 85. This resolution by the Court of Appeals is more consistent with the statutory goals of just and equitable distribution and we adopt it.

Petitioner raises several additional issues. He argues the trial court erred when it characterized the Walla Walla home as community property and awarded the home to respondent.

 Property acquired during a marriage is presumed to be community in character. *In re Marriage of Short*, 125 Wn.2d 865, 870, 890 P.2d 12 (1995). In disputed cases, the question of whether property is community or separate is retrospectively determined by its character at the date the property was acquired. *Baker v. Baker*, 80 Wn.2d 736, 745, 498 P.2d 315 (1972). Where direct and positive evidence is proffered to the contrary, however, this presumption can be rebutted. *In re Marriage of Olivares*, 69 Wn. App. 324, 336, 848 P.2d 1281 (1993).

 Petitioner attempts to rebut this presumption by

---

[1] *In re Marriage of Zahm*, 91 Wn. App. at 84-85 (quoting RCW 26.09.080) (emphasis added).

arguing that, under the facts associated with the Zahms' acquisition of the Walla Walla home, the so-called "mortgage rule" applies. *In re Estate of Finn*, 106 Wash. 137, 143-45, 179 P. 103 (1919). The mortgage rule is a legal tool used to characterize property acquired, using both community and separate funds, over a period of time. Harry M. Cross, *The Community Property Law in Washington (Revised 1985)*, 61 WASH. L. REV. 13, 39-49 (1986). The mortgage rule examines whether both parties concerned were obligated to make payments in order to retain ownership of the disputed asset. If there was no such continuing obligation, then the character of the asset is retrospectively determined to be proportionate to the ratio of separate and/or community funds used to acquire the asset. *Id.*

In this case, petitioner and respondent split equally the down payment for the Walla Walla home. Both signed the promissory note to Sterling Savings Bank to acquire the loan to pay the balance of the home's purchase price. However, petitioner argues since respondent had a nominal income at the time the Sterling Savings Bank loan was secured, the loan was secured on the basis of petitioner's more substantial income. Petitioner relies on the trial testimony of a Sterling Savings Bank loan officer that loan officers weigh heavily an applicant's income when making decisions about loan requests. However, this particular officer was not working at the Sterling Savings Bank when the Zahms requested their Walla Walla home loan. Accordingly, the loan officer could not have known precisely what criteria were considered by the Zahms' approving officer and how the individual loan criterion was weighted. This testimony alone is insufficient to rebut the presumption that this property, acquired during the Zahms' marriage, is community in character.

Furthermore, respondent's investment in the purchase of the Walla Walla home was equal with that of the petitioner. Respondent used her separate property (actually, in a slightly greater amount than that offered by petitioner) to pay the Walla Walla home's down payment.

Both respondent and petitioner negotiated the financing of the Sterling Savings Bank loan. On the loan application, respondent listed her separate assets as totaling approximately $100,000, nearly double the amount of the bank loan. While respondent's income at the time may have been somewhat inadequate, her asset base was not. The Sterling Savings Bank loan officer who testified at trial did affirm that a loan applicant's assets are part of the criteria considered by bank officers when making decisions on loan requests.

■ Finally, respondent signed the promissory note, making herself equally liable with petitioner for the repayment of the loan to third persons. When both the Zahms signed the promissory note, they created a community debt and the monies borrowed upon that debt were likewise community in character.

Given the above formidable facts surrounding the acquisition of the Walla Walla home, petitioner has failed to rebut the presumption that the home was community property. As such, the trial court did not err in characterizing the home as community property. Both the trial court's award of the home to respondent and its award of a $30,000 lien on the home to petitioner were proper.

We affirm the Court of Appeals on this issue.

Petitioner argues the trial court erred when it characterized the funds in the First Interstate/Idaho Bank account as community property. Petitioner claims monies in that bank account were his separate property.

■ The First Interstate Bank account at dispute is located outside of Washington State. The state law applied to determine the characterization of property is that of the state where the couple resided at the time the property was acquired. *In re Marriage of Landry*, 103 Wn.2d 807, 810, 699 P.2d 214 (1985). The Zahms were domiciled in Idaho at the time the disputed First Interstate/Idaho account was established; therefore, Idaho law governs.

Property acquired during a marriage is presumed to be

community in character under Idaho law. *Weilmunster v. Weilmunster,* 124 Idaho 227, 232, 858 P.2d 766 (Ct. App. 1993) (Idaho legal doctrine) (citing *Stahl v. Stahl,* 91 Idaho 794, 797-98, 430 P.2d 685 (1967)); *In re Marriage of Short,* 125 Wn.2d at 870 (Washington legal doctrine). The trial court here followed Idaho law in making its determinations regarding the First Interstate/Idaho Bank account.

The presumption under Idaho law that the account was community property can be rebutted if the petitioner can prove with reasonable certainty and particularity the account contained commingled, separate property. *Houska v. Houska,* 95 Idaho 568, 570, 512 P.2d 1317 (1973). The incident of commingling separate property with community property will not transform the separate property's character into community property. *Weilmunster,* 124 Idaho at 227 (citing *Stahl,* 91 Idaho at 797-98). However, if the commingling of separate and community funds cannot be cogently unraveled through the presentation of evidence, Idaho's judicial presumption that the disputed property is community in nature is not rebutted. *Martsch v. Martsch,* 103 Idaho 142, 146, 645 P.2d 882 (1982).

Petitioner failed to marshal evidence sufficient to overcome the judicial presumption that the monies in the First Interstate/Idaho account are community property. Both petitioner's and respondent's names were on this account. Deposits made to this account resulted in the commingling of community and separate funds. Although petitioner attempted to parse out the alleged separate monies from the community monies in the First Interstate/Idaho Bank account, he was unsuccessful in doing so. There were substantial gaps in his recollection of the bank account's transactions. The trial court's finding that the First Interstate/Idaho Bank account was community property was proper.

We affirm the Court of Appeals on this issue.

■ ■ Finally, petitioner argues the trial court erred by awarding respondent maintenance. The standard of review for the appeal of a maintenance award is abuse of discre-

tion. *In re Marriage of Mathews*, 70 Wn. App. 116, 123, 853 P.2d 462 (1993). Both Washington statutory law and case law recognize the power of a trial court to award maintenance to either party after the court properly considers all the statutory factors relevant to such a decision. RCW 26.09.090; *In re Marriage of Williams*, 84 Wn. App. 263, 267-68, 927 P.2d 679 (1996). The trial court here considered these factors in its ruling and we find no abuse of discretion for its maintenance award to respondent.

The trial court gave sufficient and tenable reasons for its application of RCW 26.09.080's fair and equitable factors in its division of the Zahms' property. Drawing from the evidence in the record, the trial court judge, on the record, arrayed the Zahms' incomes, resources, ages, medical conditions, and the ability of petitioner to provide maintenance. These factors were sufficiently adequate and justifiable. Petitioner's social security benefits were an appropriate element for the court to factor into its consideration of respondent's maintenance award for the same reasons contained in the analysis of petitioner's first claim regarding social security benefits.

We affirm the Court of Appeals.

GUY, C.J., and DURHAM, SMITH, MADSEN, ALEXANDER, TALMADGE, SANDERS, and IRELAND, JJ., concur.