IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| CHAO LIU, | ) | No. 78999-6-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JUNHUA CHANG, | ) | |
| | ) | |
| Appellant. | ) | |

PER CURIAM. — Junhua Chang appeals a decree of dissolution. He challenges the trial court's property distribution, consideration of Bitcoin assets, and maintenance award. Because Chang fails to comply with the Rules of Appellate Procedure and, in any event, does not demonstrate an abuse of discretion, we affirm.

## FACTS

In 2002, Junhua Chang married Chao Liu in Beijing, China. They lived in a condominium provided by Chang's employer. They subsequently moved to the United States, purchased a house in Bellevue, and had two children.

Chang is currently a software engineer with two master's degrees and earns between $15,000 and $17,500 per month. Chang also started four companies (General Computer Inc., General Group, Lightening Network LLC, and Lightening Express LLC), none of which are profitable. Liu works for the Seattle School District as a payroll technician earning $3,400 per month.

In 2012, Chang left Liu and their children in Bellevue to start a company in Beijing. Chang and Liu discussed dissolving their marriage at that time, but reconciled when he returned to the United States in 2013 after his start-up failed.

Since 2012, Chang has had at least three extramarital romantic relationships. He used community income to support his girlfriends, giving one $4,000 per month. He also used community income to purchase gifts and to rent hotel rooms and apartments for his girlfriends. He spent up to $174,698 on these relationships.

In June 2017, Liu filed a petition for dissolution. The assets before the court included the Bellevue house, four motor vehicles, Chang's four businesses, Chang's Bitcoin account, and the parties' retirement accounts. Chang claimed Liu also received rental income from the condominium. Liu asked the court to award her the Bellevue house and to award Chang the Bitcoin account.

At the time of trial, the house was valued at $863,895, but had $297,246 in liens against it. The parties disputed ownership of the Beijing condominium. Liu testified that Chang's former employer, the Beijing Institute of Technology, owned it, but that she and Chang leased it to students and family members for a number of years. Chang, on the other hand, testified that he purchased the condominium and that Liu receives rental income from it.

Much of the trial focused on Chang's acquisition of Bitcoins during the marriage. In November 2017, Liu took a photograph of Chang's computer screen showing his MultiBit Classic Bitcoin Wallet with 53.21 Bitcoin valued at $504,766. A May 2018 email from Chang contained screenshots of transactions for the Bitcoin wallet and showed the

same number of Bitcoins but with a lower value.[1] Chang testified that he sold all of the Bitcoin by 2015 and that the Wallet's balance was actually zero at the time of trial. He claimed the screenshots Liu provided were from obsolete software that stopped working before he transferred and sold his Bitcoin.

The court found that, "overall," Chang was not credible and that it could not determine "to what extent he was lying or delusional." The court found that Liu presented compelling evidence that Chang had 53+ Bitcoin as of May 2018 and Chang provided no evidence to support his claim that he had no Bitcoin. The court valued the Bitcoin at $328,903 as of June 24, 2018, and awarded it to Chang "because the court has no viable way to transfer it to the wife." The court declined to rule on the ownership of the Bejing condominium or past rents for the condominium. The court found that neither party had an equity interest in the condominium and that there was no proof that Liu receives income from it.

The court further found that Chang's use of community income in his extramarital relationships constituted "waste" of community assets in the amount of $174,698. Accordingly, the court put that amount "on his side of the ledger," finding that Chang "got the entire benefit of that, because he got the benefit of spending time with his girlfriends."

After considering the disparity in the parties' current and potential earnings, the court concluded that "an unequal division of assets is warranted in this case." Noting the parties had very few assets, the court found:

> While this is a no-fault state, and the court cannot award money based on
> the husband's bad behavior, the court does note that giving the wife more
> than half of the community assets will help to make up in some way for the

---

[1] The May 2018 emails were admitted as Exhibit 57, but the exhibit has not been designated on appeal.

husband's having spent community assets on unproductive projects or simply on girlfriends.

The court then awarded the Bellevue house to Liu, explaining:

> The court cannot go back and award the money the husband spent on girlfriends, or took out in cash, to the wife. That money is simply gone. It cannot award the Bitcoins, because their nature is that they are untraceable, and the court has no way to reach them. The court will therefore award the house to the wife . . . .

The court also awarded Lui one of the parties' cars and her retirement accounts. The court awarded Chang the value of the Bitcoin account and the other three cars.[2] This resulted in a property distribution of 55.41% to Liu and 44.59% to Chang. In making this determination, the court stated, "This is actually a lower ratio [for Liu] than the court would otherwise find appropriate, but there are no other assets to award her."

The court awarded Liu maintenance of $3,000 per month for five years "based on the wife's needs and husband's ability to pay." Chang appeals.

## DECISION

RAP Violations

Initially, we address Chang's noncompliance with our Rules of Appellate Procedure (RAP). "[P]ro se litigants are bound by the same rules of procedure and substantive law as attorneys." Westberg v. All-Purpose Structures Inc., 86 Wn. App. 405, 411, 936 P.2d 1175 (1997). Failure to comply with the RAP and related case law may preclude review. State v. Marintorres, 93 Wn.App. 442, 452, 969 P.2d 501 (1999). For example, arguments unsupported by references to the record or citation to authority need not be considered. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Appellate courts are not required to search

---

[2] The court also awarded Chang his four businesses but noted they do not seem to make any money or have any assets.

4

the record to locate portions relevant to a litigant's arguments. <u>Mills v. Park</u>, 67 Wn.2. 717, 721, 409 P.2d 646 (1966). And conclusory claims presented without meaningful argument also need not be considered. <u>State v. Rafay</u>, 168 Wn.App. 734, 843, 285 P.3d 83 (2012). Chang's opening and reply briefs violate several of these principles.

RAP 10.3(a)(5) requires the appellant's brief to include "[a] fair statement of the facts and procedure relevant to the issues presented for review, without argument. Reference to the record must be included for each factual statement." Chang's statement of the case contains no references to the record. And with few exceptions, the argument section of his briefs violate RAP 10.3(a)(6), which requires "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." Finally, Chang has failed provide portions of the record necessary for review. Taken together, these omissions are fatal to Chang's appeal. Moreover, as discussed below, his arguments on appeal lack merit.

<u>Property Distribution</u>

Chang challenges the trial court's property distribution, arguing that the court abused its discretion by awarding Liu the majority of the assets, giving her the family home, and leaving him with an empty Bitcoin account.

We review a trial court's property division following a dissolution for manifest abuse of discretion. <u>In re Marriage of Muhammad</u>, 153 Wn.2d 795, 803, 108 P.3d 779 (2005). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." <u>In re Marriage of Littlefield</u>, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

In dissolution proceedings, a trial court has broad discretion to make "just and equitable distribution of property based on the factors enumerated in RCW 26.09.080." In re Marriage of Wright, 179 Wn. App. 257, 261, 319 P.3d 45 (2013). These factors include, but are not limited to: "(1) The nature and extent of the community property; (2) The nature and extent of the separate property; (3) The duration of the marriage or domestic partnership; and (4) The economic circumstances of each spouse or domestic partner at the time the division of property is to become effective." RCW 26.09.080.

"Just and equitable distribution does not mean that the court must make an equal distribution." In re Marriage of DewBerry, 115 Wn. App. 351, 366, 62 P.3d 525 (2003). "A just and equitable division 'does not require mathematical precision, but rather fairness, based upon a consideration of all the circumstances of the marriage, both past and present, and an evaluation of the future needs of parties.'" In re Marriage of Larson and Calhoun, 178 Wn. App. 133, 138, 313 P.3d 1228 (2013), rev. denied, 180 Wn.2d 1011, 325 P.3d 913 (2014). "A trial court is not required to place the parties in precisely equal financial positions at the moment of dissolution." In re Marriage of Wright, 179 Wn. App. 257, 262, 319 P.3d 45 (2013).

The record demonstrates the court considered and weighed the relevant statutory factors. The court considered the nature and extent of the community and separate property, finding that

> the parties have very few assets, other than the money the wife [ha]s managed to save, and the house, and the husband's Bitcoin account, because the husband seems to have either spent the money on various startup businesses which did not work out, or on girlfriends.

The court found it could not award Liu the Bitcoins because "their nature is that they are untraceable, and the court has no way to reach them."

The court also found that Chang wasted community funds and that giving Liu more than half the community assets "will help to make up in some way for the husband's having spent community assets on unproductive projects or simply on girlfriends." Because Chang does not assign error to these findings, we accept them as verities on appeal. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 808, 828 P.2d 549 (1992).

The court also considered the parties' economic circumstances, finding that Chang "makes anywhere from 4 to 5 times what the wife does, and in future years will have a vastly greater income earning ability." The court found Chang "has the ability and history of making $17,500 per month" as a "talented and skilled software engineer," whereas Liu was just starting out as a payroll technician, earning $3400 per month, and would not likely "earn a great deal more than this in the future." Again, Chang does not assign error to these findings, so we accept them as verities.

The court's unchallenged findings demonstrate that its property division was based on fairness and "upon a consideration of all the circumstances of the marriage, both past and present, and an evaluation of the future needs of parties." Larson, 178 Wn. App. at 138. Chang fails to show the trial court abused its discretion.

Bitcoin Account

Chang claims the court erred in finding he owned 53+ Bitcoins, arguing there was no evidence showing he owned Bitcoin at the time of trial. Chang points to his testimony that he sold all the Bitcoins by December 2015 to support himself. He also notes that the screenshot taken on his computer in November 2017 shows the Bitcoin Wallet software "synchronizing," and asserts this was not the final balance. Chang

further asserts that the transaction and ledger information he provided "clearly show the balance of his personal Bitcoin Wallet as 0 at trial."[3]

We will not overturn findings of fact if they are supported by substantial evidence in the record. In re Marriage of Katare, 175 Wn.2d 23, 35, 283 P.3d 546 (2012). Substantial evidence is "evidence sufficient to persuade a fair-minded person of the truth of the matter asserted." In re Marriage of Chandola, 180 Wn.2d 632, 642, 327 P.3d 644 (2014). We will not disturb credibility determinations or weigh evidence on appeal. In re Marriage of Fahey, 164 Wn. App. 42, 62, 262 P.3d 128 (2011). We defer to the trial court's finding if it is within the range of credible evidence. Marriage of Rockwell, 141 Wn. App. 235, 248, 170 P.3d 572 (2007).

The trial court found that Liu presented "compelling evidence" that Chang had 53+ Bitcoins in his control. Substantial evidence supports this finding. The account information Chang provided in May 2018 showed he had that amount of Bitcoin about a month before trial. Chang did not provide any evidence showing different current account values. Nor did he provide credible evidence that he no longer had the Bitcoins or that the word "synchronizing" on the screenshots meant the balances were not current. The trial court expressly found Chang's explanations about what happened to the Bitcoins not credible, stating in part:

> The transaction register [Chang] provided show transfers into his personal wallet and no transfers out. The transaction register he provided for his. 2nd Bitcoin account in a company called client base, show unique link identifiers between his 2 personal accounts, which did not exist for all of the other transactions. He provided no actual account statements for either of his 2, accounts: In cross-examination, he agreed that if he took his computer [] to the court it would show that he still had 53+ Bitcoins in his account. Mr. Chang told a very complicated story about how we cannot possibly rely on this information because he no longer has that wallet due

---

[3] This evidence was admitted as Exhibit 57, which was not designated on appeal.

to the demise of a computer program. Because of the nature of cryptocurrency, it is very difficult for anyone but the owner of the Bitcoin to establish how many Bitcoin are owned by whom at what time and at what value. The upshot is that Mr. Chang never provided any documentary evidence that he does not continue to own 53 Bitcoin if not more (his Closing suggested it was actually 60 Bitcoin).

. . . The court does not find Mr. Chang credible when he testified he no longer has the Bitcoins, when his own printouts, and screenshots, from his own computer, which he had complete control of, says he still has the Bitcoins. The court also notes that the photograph the wife took, shows the wallet actively "synchronizing with network", which indicates it was being run in November 2017, and again in May 2018. It is impossible to see why he would be actively running a program which he now claims was defective.

. . . [T]he court gave him every chance to show what had actually happened to the Bitcoins. This included him having the chance to bring his PC into court and show the court what had happened to the Bitcoins. He failed to do this. The court therefore finds that as of November 2017 and again in May 2018, he had 53+ Bitcoins.

The trial court's finding that Chang owned 53+ Bitcoin at the time of trial was within the acceptable range of credible evidence. See Rockwell, 141 Wn. App at 248.

Chang further contends the court erred by admitting evidence of the May 2018 email and screenshot despite his objection. Chang objected below as follows:

THE COURT: Any objection to 57?

THE RESPONDENT: Yes. So I want to clarify the original screenshot that my wife took. She used a defunct bitcoin wallet. That software has been abandoned three years ago. It doesn't show the latest balance because the company has bought by another company because they abandoned the software. So the 53 bitcoin has already been sold. It had all the transactions that will be presented.

THE COURT: Okay. But we know that we at least had -- you had 53 here when you sent the e-mail. Right?

THE RESPONDENT: Pardon me?

THE COURT: Looks like you still had 53 bitcoin when you sent this e-mail in May of 2018.

THE RESPONDENT: No, Your Honor. So it shows another -- that on May 1st, 2015, it has 53 bitcoin. It's on the exhibit, this exhibit. I think it's 57, page four. There's a clear date. It says May 1st, 2015. There is 53 bitcoins there. So –

MR. HANSEN: If I may continue, Your Honor.

THE COURT: You may. I don't see that this is an objection to the admissibility of it. You may certainly raise questions about it later.

We review a trial court's evidentiary rulings for abuse of discretion. State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995). The trial court correctly concluded that Chang's objection went to the weight, not the admissibility, of the evidence.

Maintenance

Chang challenges the maintenance award of $3,000 per month for 72 months. We review a trial court's award of maintenance for abuse of discretion. In re Marriage of Zahm, 138 Wn.2d 213, 226, 978 P.2d 498 (1999). In re Marriage of Booth, 114 Wn.2d 772, 776, 791 P.2d 519 (1990). "The only limitation on the amount and duration of maintenance under RCW 26.09.090 is that the award must be 'just.'" In re Marriage of Wright, 179 Wn. App. 257, 269, 319 P.3d 45 (2013) (citing In re Marriage of Bulicek, 59 Wn. App. 630, 633, 800 P.2d 394 (1990)). "Maintenance is 'a flexible tool' for equalizing the parties' standard of living for an 'appropriate period of time.'" Wright, 179 Wn. App. at 269 (quoting In re Marriage of Washburn, 101 Wn.2d 168, 179, 677 P.2d 152 (1984)).

Chang fails to demonstrate an abuse of discretion in the court's maintenance award. The court awarded maintenance "based on the wife's needs, and the husband's ability to pay," noting Chang's monthly income of $17,500 and Liu's monthly income of $3,400. The court considered the length of the marriage (15 years), finding that "a ratio

of one year of maintenance to every 3 years of marriage is fair." The court also found that "at a 15 year point [in the marriage it] is appropriate to factor in the standard of living the parties could enjoy at $150,000-$200,000 per year, as well as solely the needs of the mother." The court found that Liu should be able to stay in the family home with the children, that she has a mortgage of $2400, and that she "needs $5730 per month, at minimum, which the court finds is a reasonable amount for her and the children." After considering the mortgage, Liu's net income and child support, the court determined $3000 per month was "appropriate given the disparity in incomes."

Chang contends the court failed to consider Liu's financial resources, specifically her child support and rental incomes.[4] As discussed above, the court considered all of Liu's sources of income, including child support. While Chang contends the court failed to consider the rental income from the Bejing condominium, the court found neither Chang nor Liu "have a property right [in the Beijing condominium] that can be bought and sold," and "there is no proof" that Liu receives "income derived from the condominium." We accept these unchallenged findings as verities on appeal.

Chang also claims the court failed to consider rental income from the Bellevue home, arguing that Liu can rent out extra rooms in that house. But the trial court made no findings about such income and Chang points to no support in the record for this claim.

Chang raises additional arguments in his reply brief that were not raised in his opening brief. We will not consider arguments raised for the first time in a reply brief.

---

[4] Chang asserts that she receives $2300 in monthly child support, though the court's findings indicate that amount is $1505 per month. The child support order has not been designated on appeal.

Cowiche Canyon, 118 Wn.2d at 809 ("An issue raised and argued for the first time in a reply brief is too late to warrant consideration.").

Liu requests enforcement of the trial court's orders, claiming that Chang has, among other things, failed to pay attorney fees, maintenance, and child support. Enforcement matters are the province of the trial court.

Affirmed.