# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Marriage of: | No. 58966-4-II |
| SARA LEA HALLIN, | |
| Appellant, | |
| and | UNPUBLISHED OPINION |
| BRIAN SCOTT HALLIN, | |
| Respondent. | |

VELJACIC, J. — Sarah Hallin (Chandler)[1] appeals from the trial court's division of community property resulting from the dissolution of her marriage to Brian Hallin. Chandler argues the court erred in not requiring Hallin to provide further documentation of his income and in awarding him the business, Reliable Masonry Services (Reliable Masonry), and 50 percent of the equity in the home while holding her responsible for repairs. Finding no error, we affirm.

## FACTS

### I. BACKGROUND

Chandler and Hallin were married in Las Vegas, Nevada on February 17, 2004. They had four children. After getting married, Chandler and Hallin purchased a home in Rochester. Hallin's parents loaned Chandler and Hallin a $9,000 down payment to put toward the house. Hallin and

---

[1] It appears that Sarah Hallin remarried, and her last name is now Chandler.

Chandler completed projects on the property, including putting a new roof on the garage and installing a fence and driveway. Hallin also renovated an outbuilding on the property.

During their marriage, Hallin owned and worked as a mason for the sole proprietorship, Reliable Masonry. Chandler helped keep the books for Reliable Masonry for the first five years. The parties failed to file taxes related to the business for several years and the Internal Revenue Service performed an audit. The business was also audited by the masonry union that resulted in a default judgment of $7,890.

Hallin and Chandler separated on March 18, 2021. Chandler petitioned for dissolution of the marriage.

II.    TRIAL

At trial, the court evaluated the assets and income of the parties. With respect to Hallin's net annual income, Chandler testified that Hallin earned $350,000. Hallin stated that his gross monthly income was only $5,742. Hallin also had a pension through Bricklayers and Trowel Trades International Pension Fund.

At the time of trial, Chandler was a certified nursing assistant. Chandler stated that she was accepted into a radiology program that would take three years to complete, but would triple her salary.

The trial court also evaluated the outstanding debts of the parties. Gaspar Garrido, who purchased a truck from Chandler, testified that he obtained a judgment against Chandler for $8,235 because there were inconsistencies with the signatures on the title of the vehicle she sold him. This judgment was later reduced to a lien on Chandler and Hallin's house. Chandler also had $1,175 in Good to Go![2] violations for a vehicle in her possession.

---

[2] Good to Go! is the toll collection system for the State of Washington.

III.     TRIAL COURT'S FINDINGS AND CONCLUSIONS

After hearing from both parties, the trial court found that neither Chandler's nor Hallin's testimony was credible.  The court stated that "both [Chandler and Hallin] at different times either stretched the truth, exaggerated, or said things that were untrue."  Rep. of Proc. (RP) (Nov. 6, 2023) at 6-7.  Relevant here, the court found that Hallin understated his finances, and Chandler "grossly overstat[ed]" Hallin's finances.  RP (Nov. 6, 2023) at 8.  The court stated that because it trusted neither party, it was "particularly scrupulous when looking at the transcript, [] notes, and the records."  RP (Nov. 6, 2023) at 9.

Because Hallin did not submit complete financial information, the court imputed Hallin's gross monthly income at $12,000 with a net of $8,695.[3]  The court also concluded that spousal support was appropriate based on the duration of the marriage, Chandler's need, Hallin's ability to pay, and the length of time it would take for Chandler to obtain the radiology degree.

The court found that the separate personal property had already been divided fairly between the parties.  The court found that the community personal property consisted of the house in Rochester, Hallin's pension, a 1995 Chevrolet Suburban, a 2008 Dodge Ram, a 2022 Dodge Ram, a 1991 Chevy flatbed, a 2018 Chevy Silverado, and all goodwill and equipment associated with Reliable Masonry.

Then, turning to the debts of the marriage, the trial court found that the community debt included the mortgage on the house, the lien on the house by Garrido, the Good to Go! fees, the union default judgment, past due federal taxes for the marital community including but not limited

---

[3] Because our record does not contain all the exhibits submitted at trial, it is unclear exactly what documents the trial court considered.

to the unknown amount of taxes owed by Reliable Masonry, and the unknown amount of fees, fines, and taxes owed to Washington State agencies for Reliable Masonry.

The trial court awarded Chandler the marital home with a deadline to refinance or sell by June 1, 2029. The court stated that a major factor in awarding Chandler the home was so the minor children could have the continuity of living in the family home. The court ordered Chandler to buy out Hallin's portion by paying him 50 percent of the equity in the home. If the home was sold, Chandler had to pay for any repairs to the home prior to listing, and she was required to pay Hallin 50 percent of the profit. The court also awarded Chandler 50 percent of the martial community portion of Hallin's pension, the 1995 Chevy Silverado, and the 2002 Dodge Ram.

The trial court awarded Hallin the other 50 percent of the community portion of the pension, the 2008 Dodge Ram, the 1991 Chevy flatbed, and the 2018 Chevy Silverado.

Chandler was responsible for the mortgage payments on the home, the lien against the home by Garrido, the Good to Go! charges, and any credit cards in her name. Hallin was responsible for the default judgment, the unknown amount of past due federal taxes for the marital community including those for Reliable Masonry, the unknown amount of fees, fines, and taxes owed to Washington State agencies for Reliable Masonry, and any credit cards in his name. The court also ordered Hallin to pay Chandler $500 in spousal support from December 1, 2023 to June 30, 2027.

Chandler appeals from the trial court's division of community property.

Additional facts relevant to the analysis are included below.

## ANALYSIS

As an initial matter, Hallin asks us to not consider Chandler's appeal as her brief fails to comply with the Rules of Appellate Procedure (RAP).

4

RAP 10.3(a)(6) requires that an appellate brief contain "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." When "a party presents no argument on a claimed assignment of error, that assignment of error is waived." *In re Detention of L.S.*, 23 Wn. App. 2d 672, 686, 517 P.3d 490 (2022). "This court will not consider claims insufficiently argued by the parties." *State v. Elliott*, 114 Wn.2d 6, 15, 785 P.2d 440 (1990); *Norcon Builders, LLC v. GMP Homes VG, LLC*, 161 Wn. App. 474, 486, 254 P.3d 835 (2011).

Because Chandler fails to cite to any authority to support her assignments of error, we need not consider her arguments. However, even if we do consider them, we conclude there was no error.

## I. FINANCIAL DOCUMENTATION

Chandler argues the trial court erred in not requiring Hallin to submit further financial documentation for Reliable Masonry. However, there is nothing in the record to suggest Chandler conducted discovery. If she did, the record is also devoid of any indication that the trial court made a ruling as to discovery. As such, there is no trial court decision for us to review on this issue. Therefore, Chandler has not shown that any error occurred.

## II. DIVISION OF PROPERTY

Chandler also argues the trial court erred in awarding Hallin the business, Reliable Masonry, and 50 percent of the equity in the home while holding her responsible for repairs. We disagree.

We afford the trial court "broad discretion" in distributing marital property. *In re Marriage of Rockwell*, 141 Wn. App. 235, 242, 170 P.3d 572 (2007). "'A property division made during the dissolution of a marriage will be reversed on appeal only if there is a manifest abuse of discretion.'"

*In re Marriage of Urbana*, 147 Wn. App. 1, 9, 195 P.3d 959 (2008) (quoting *In re Marriage of Muhammad*, 153 Wn.2d 795, 803, 108 P.3d 779 (2005)). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or reasons. *Id.* at 9-10.

Where, as here, the trial court has weighed the evidence, our role on review is to determine whether substantial evidence supports the findings of fact, and in turn, whether the findings support the trial court's conclusions of law. *Rockwell*, 141 Wn. App. at 242. Substantial evidence supports a finding of fact when the evidence is sufficient to persuade a fair-minded, rational person of the truth of the matter. *Perez v. Dep't of Lab. & Indus.*, 28 Wn. App. 2d 916, 921, 542 P.3d 584 (2023), *review denied*, 2 Wn.3d 1033 (2024). We do "'not substitute [our] judgment for the trial court's, weigh the evidence, or adjudge witness credibility.'" *Rockwell*, 141 Wn. App. at 242 (quoting *In re Marriage of Greene*, 97 Wn. App. 708, 714, 986 P.2d 144 (1999)). Further, unchallenged factual findings are verities on appeal. *Stone v. Dep't of Lab. & Indus.*, 172 Wn. App. 256, 260, 289 P.3d 720 (2012).

RCW 26.09.080 governs the distribution of property when a marriage is dissolved. This statute requires that the distribution of property be "just and equitable." *In re Marriage of Niemi*, 19 Wn. App. 2d 357, 362, 496 P.3d 305 (2021) (quoting RCW 26.09.080). RCW 26.09.080 provides a list of nonexclusive factors the trial court is to consider when distributing marital property. *In re Marriage of Crosetto*, 82 Wn. App. 545, 556, 918 P.2d 954 (1996). These factors include:

> (1) The nature and extent of the community property;
> (2) The nature and extent of the separate property;
> (3) The duration of the marriage or domestic partnership; and
> (4) The economic circumstances of each spouse or domestic partner at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to a spouse or domestic partner with whom the children reside the majority of the time.

RCW 26.09.080. "A fair and equitable division by a trial court 'does not require mathematical precision, but rather fairness, based upon a consideration of all the circumstances of the marriage, both past and present, and an evaluation of the future needs of parties.'" *In re Marriage of Zahm*, 138 Wn.2d 213, 218-19, 978 P.2d 498 (1999) (quoting *Crosetto*, 82 Wn. App. at 556).

Here, Chandler fails to assign error to any of the trial court's findings of fact. As such, they are verities on appeal. *Stone*, 172 Wn. App. at 260. To the extent Chandler argues the trial court's division of the marital estate was inequitable based on fair market value of the awards, the record before us does not provide values of each of the items awarded, or alternatively, the value of each party's award in its entirety. Therefore, we cannot evaluate claims that the value awarded to each party was inequitable. However, we can and do recount the items awarded toward the goal of assessing whether the trial court abused its discretion on equitable bases other than fair market value of the respective awards.

The trial court awarded Chandler 50 percent of the marital community portion of Hallin's pension associated with Bricklayers & Trowel Trades International Pension fund, the 2002 Dodge Ram, and the 1995 Chevrolet Suburban. The court awarded Chandler the marital home with a deadline to refinance or sell by June 1, 2029. The court ordered Chandler to buy out Hallin's portion by paying him 50 percent of the equity in the home. If the home was placed on the market for sale, Chandler was responsible for costs associated with any repairs completed on the home prior to listing, and she was required to pay Hallin 50 percent of the profit.

The trial court awarded Hallin the other 50 percent of the marital community portion of the pension, the 1991 Chevrolet Flatbed, the 2008 Dodge Ram, and the 2018 Chevrolet Silverado. Hallin was ordered to pay Chandler $500 in maintenance each month from December 1, 2023 to June 30, 2027, to allow Chandler time to complete a degree.

The court explained that while it was awarding Hallin the Reliable Masonry business and its equipment, Hallin was also responsible for the significant liabilities associated with the business. The trial court stated:

> In large part, when I look at the assets and liabilities, other than the home, I consider that distribution to [be] fair, just, and equitable. [Hallin] is getting some more valuable vehicles if we look at the values, he's got three cars, [Chandler]'s got two. I think the value of [Hallin]'s together are more valuable. But then we look at the business and we look at the liabilities, which are unknown at this point, because we don't know the full impact of various taxes and fees and fines. But there is the goodwill.
> I'm finding, when I look at the statutory criteria and estimated value of these debts, liabilities, assets, goodwill, et cetera, that that right there is fair, just, and equitable.

RP (Nov. 6, 2023) at 20.

Regarding the home, the trial court stated that Hallin had a significant ownership and marital interest in the home and that it would not be "fair, just, and equitable for [Chandler] simply to get the home, simple, period, full stop. Something else needs to be done." RP (Nov. 6, 2023) at 20. So, the court awarded Hallin 50 percent of the equity in the home. The court also made clear that the reason Chandler was responsible for any repairs to the home is because she would be the one living there until potentially 2029. The court stated, "It makes sense, given that [Chandler] has the benefit of living in the home, that she is going to be responsible for the repairs associated with the home over that extended period of time, the wear and tear." RP (Nov. 6, 2023) at 24.

In sum, the trial court considered the nonexclusive factors in RCW 26.09.080, and none of its decisions were based on untenable grounds or reasons. Therefore, the trial court did not abuse its discretion in awarding Hallin Reliable Masonry and 50 percent of the equity in the home and in holding Chandler responsible for repairs.

III.    ATTORNEY FEES ON APPEAL

Hallin requests attorney fees on appeal pursuant to RCW 26.09.140 and RAP 18.1(c).

Although RCW 26.09.140 permits us to award attorney fees on appeal upon a showing of financial need, Hallin did not comply with RAP 18.1(c), which requires him to submit an affidavit of financial need at least 10 days before the case is considered.  Because he failed to do so, we decline to award attorney fees on appeal.  *Crosetto*, 82 Wn. App. at 565.

## CONCLUSION

Because the trial court did not abuse its discretion in dividing the martial property, we affirm.

Veljacic, J.

We concur:

Maxa, J.

Cruser, C.J.